CHESAPEAKE & OHIO RAILWAY COMPANY v PUBLIC SERVICE
COMMISSION

1. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

   The primary rule of construction, where statutory language is
   unclear, is to ascertain and give effect to the intention of the
   Legislature; and in construing a statute its spirit and purpose
   should prevail over its strict letter.

2. ADMINISTRATIVE LAW—PUBLIC SERVICE COMMISSION—RAILROADS—
   INVESTIGATIONS OF SERVICES.

   The Public Service Commission has broad powers to regulate
   railroad freight service, and in order to fulfill its duties it has
   the power to investigate that service, and may do so on its own
   motion, without a prior complaint by a consumer.

3. ADMINISTRATIVE LAW—PUBLIC SERVICE COMMISSION—INVESTIGA-
   TION OF SERVICES.

   The power of the Public Service Commission to investigate ser-
   vices on its own motion is not dependent on the commission's
   power to investigate rates.

4. STATUTES—CONSTRUCTION—RESULTS.

   Statutes should be construed with the result in mind, and,
   therefore, a reasonable construction should be given which will
   avoid absurd results.

5. ADMINISTRATIVE LAW—PUBLIC SERVICE COMMISSION—RAILROADS—
   STATUTES—ORDERS.

   The Public Service Commission is authorized by statute to issue
   orders regarding changes in service by railroads, after a hear-
   ing and investigation of the changes (MCLA 462.22, 462.32).

6. ADMINISTRATIVE LAW—AGENCY RULES—COURTS—REVIEW—VALID-
   ITY.

   Courts employ a threefold test to determine the validity of rules

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 73 Am Jur 2d, Statutes § 254.
[2, 3, 5, 7] 64 Am Jur 2d Public Utilities § 16 *et seq.*
[6] 2 Am Jur 2d, Administration Law §§ 313, 314.

promulgated by an agency empowered to make rules: (1) whether the rule is within the matter covered by the enabling statute; (2) if so, whether it complies with the underlying legislative intent; and (3) whether it is arbitrary or capricious.

7. ADMINISTRATIVE LAW—PUBLIC SERVICE COMMISSION—RAILROADS— RULES—CHANGE IN SERVICE.

A rule of the Public Service Commission which requires a railroad to notify the commission 45 days in advance of implementation of any proposed change in service is consistent with the legislative intent to empower the commission to regulate the railroads, is reasonable, and is valid (1954 AC R460.72).

Appeal from Ingham, Donald L. Reisig, J. Submitted Division 2 October 15, 1974, at Lansing. (Docket No. 19397.) Decided February 24, 1975. Leave to appeal denied, 394 Mich 818.

Complaint by the Chesapeake & Ohio Railway Company against the Michigan Public Service Commission to enjoin the defendant from enforcement of a commission rule, and for a declaration regarding the power of the commission to conduct investigations or issue orders relating to freight services on its own motion. Injunction granted, and the commission's power to investigate and issue orders upheld. Both parties appeal, by leave granted. Affirmed in part, reversed in part.

*Foster, Lindemer, Swift & Collins* (by *Webb A. Smith)* and *John J. Holden,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter V. Kron* and *Thomas J. Emery,* Assistants Attorney General, for defendant.

Before: D. E. HOLBROOK, P. J., and R. B. BURNS and BEBEAU,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

BEBEAU, J. This is an appeal by both parties, the Chesapeake and Ohio Railway Company (railroad) and the Michigan Public Service Commission (commission) from a judgment issued by Ingham County Circuit Court. The commission appeals from an injunction permanently restraining it from enforcing rule 62 of its rules of practice and procedure (1954 ACR 460.72). The railroad appeals the trial court's ruling that the commission is empowered to conduct, on its own motion, investigations and issue orders concerning changes in railroad freight service.

This conflict began when the railroad removed its resident freight agent from its Harbor Beach, Michigan station. All the customer services which the resident agent had performed were transferred to a traveling agent whom customers could reach by phone. The railroad posted a notice describing the change in service and contacted its customers individually to explain the new arrangement. The railroad did not give the commission the notice of this change of service, which is required by commission rule 62. Rule 62 requires a railroad planning to change its service at or from any agency station to notify the commission of its plans 45 days before the change in service is to take place. The commission indirectly learned of the Harbor Beach agency change when the railroad submitted a supplementary list of freight station services to the commission's Rates and Tariffs Section. Upon learning of the Harbor Beach agency change, the commission commenced, on its own motion, an investigation and hearing. The railroad agreed that it had not complied with rule 62, but claimed that rule 62 was invalid. The commission issued an order approving the Harbor Beach agency change, but ordered the railroad to comply with rule 62 in the future.

After its motion for rehearing was denied, the railroad filed suit in Ingham County Circuit Court seeking a permanent injunction against the commission's enforcement of rule 62. In addition the railroad contended that the commission did not have the power to conduct investigations or issue orders relating to freight services on its own motion. On January 14, 1974, the court entered an order permanently enjoining the commission from enforcing rule 62. The court also ruled that, as a matter of law, the commission could legally investigate, on its own motion, changes in the railroad freight service and issue orders pursuant to its findings.

The questions raised by the parties on appeal differ. We find two common issues raised on appeal: (1) whether the commission has the power to investigate freight service on its own motion and to issue orders pursuant to its investigation; and (2) whether the commission had authority to issue rule 62. We consider these issues successively.

The trial court held that the commission is empowered to investigate changes in freight service on its own motion and to issue orders consistent with its findings. The court based this holding on its interpretation of § 22(c) of the railroad act, 1909 PA 300, which states in relevant part:

"Whenever the commission shall believe that any rate or rates or charge or charges may be unreasonable or unjustly discriminatory, or that *any service is inadequate,* and that any investigation relating thereto should be made, it may, upon its own motion, investigate the same. * * * on 10 days' notice to the common carrier of the time and place of such investigation, the commission may proceed to investigate *such rate or charge* in the same manner and make like orders in respect thereto as if such investigation had been made

upon complaint." (Emphasis supplied.) MCLA 462.22(c); MSA 22.41(c).

The court stated that the first sentence of § 22(c) clearly gives the commission the power to conduct an investigation "upon its own motion" whenever it believes that "any service is inadequate". The court found the commission's power to issue orders in the last sentence of § 22(c). There, the statute provides that the commission shall conduct its investigation as if the "investigation had been made upon complaint". The court then looked to subsection (a) of § 22 which provides that when an investigation is made upon complaint, the commission is empowered to issue orders pursuant to its findings, MCLA 462.22 (a); MSA 22.41(a).

The railroad argues that the railroad act does not give the commission the power to investigate freight service or to issue orders concerning freight service in the absence of a complaint. The railroad's argument is based on its contention that the commission's entire authority to regulate freight service is contained in § 13(a). That Section states:

"All railroads shall keep and maintain adequate and suitable freight depots, buildings, switches and side-tracks for the receiving, handling, and delivering of freight transported or to be transported by such rail-roads. Upon the filing of complaint with the commission and hearing thereon as provided in § 22, the commission is authorized to make full inquiry in the matter of station facilities, * * * as it shall deem for the public interest and shall be just and reasonable." MCLA 462.13(a); MSA 22.32(a).

The railroad stresses the fact that § 13 does not provide for investigation by the commission on its own motion; only for investigation pursuant to

complaint. It interprets § 22(c) as not applying to the regulation of freight service, but only to regulation of rates. According to this interpretation, the commission may investigate freight service on its own motion only as such service relates to the rates charged for it. The railroad bases its interpretation of § 22(c) on a comparison of the section's first and last sentences. The first sentence provides that the commission may conduct an investigation whenever it believes "any rate * * * or charge * * * may be unreasonable, or *that any service is inadequate".* (Emphasis supplied.) The last sentence provides that, after notice to the railroad, the commission may conduct the investigation and issue orders concerning "such *rate* or *charge".* (Emphasis supplied.) The Legislature, the railroad notes, intentionally mentioned only rates and charges, not service, when empowering the commission to investigate and to make orders. By excluding "service" from the enabling language of the last sentence, the railroad argues, the Legislature intended to empower the commission to investigate and issue orders on its own motion only when it believed a rate or charge to be unreasonable in light of the services rendered. It did not empower the commission to *sua sponte* investigate only freight service.

We agree with the trial court's interpretation of § 22(c) and with its holding on this issue. We will discuss separately our holding concerning the commission's power to investigate and our holding concerning the commission's power to issue orders.

## Power to Investigate

Where statutory language is unclear, the primary rule of construction is to ascertain and give effect to the intention of the Legislature. *Aikens v*

*Department of Conservation,* 387 Mich 495; 198 NW2d 304 (1972). In construing a statute, its spirit and purpose should prevail over its strict letter. *People v McFarlin,* 389 Mich 557; 208 NW2d 504 (1973). We find that the Legislature intended the commission to investigate freight service on its own motion. Our interpretation of the legislative intent is based on two factors, the history of the Public Service Commission and our interpretation of relevant sections of that act, specifically §§ 4(a) and 44. The history of the Public Service Commission manifests a clear legislative intent that the commission should be able to conduct investigations without a prior complaint by a consumer. The commission was originally established to protect the consumer. The Legislature sought to remedy the imbalance between utilities and the consumer by creating an agency which would be a watchdog for and representative of the consumer.

The fact that the Legislature intended the Public Service Commission to act on its own, not simply to react to complaints of consumers, is further borne out by the history of the railroad act. In 1909, the Legislature created a Railroad Commission, one of whose functions was "to insure adequate service". The Legislature incorporated the Railroad Commission into the Public Utilities Commission by 1919 PA 419, § 3. Three years later, Chief Justice Fellows, interpreting the 1919 act, stated that "the former Michigan railroad commission * * * was not limited in its action exclusively to cases brought before it on complaint but could act on its own motion". *Taylor v Michigan Public Utilities Commission,* 217 Mich 400, 405; 186 NW 485, 488 (1922). The Public Utilities Commission was abolished by the Legislature in 1939 and it created the Public Service Commis-

sion. It did so because the Public Utilities Commission had not taken an active enough role in regulating utilities. 1939 PA 3; MCLA 460.4; MSA 22.13(4).

The Public Service Commission was thus created to vigorously regulate all public utilities, certainly including the railroads. All of the duties and powers of the original Railroad Commission, including the power to act on its own motion, have been transferred to the Public Service Commission. MCLA 460.4; MSA 22.13(4).

A reading of relevant sections of the railroad act additionally demonstrates the Legislature's intent to give the commission broad powers to regulate freight service. We stress MCLA 462.44; MSA 22.62; MCLA 462.4(a); MSA 22.23(a) and MCLA 462.28; MSA 22.47, which we read in light of the legislative mandates in the statute's title. The title of the act contains a specific mandate to "insure adequate service". This, of course, must include adequate freight service. In § 44 of the act, the Legislature made its broadest delegation of regulatory powers and vested in the commission "police powers of the state over railroads" and makes it "the duty of said (Public Service) commission to exercise the same in accordance with the requirements of the law". MCLA 462.44; MSA 22.62.

The requirements of the law for freight services are found in § 4(a) MCLA 462.4(a); MSA 22.23(a), which requires railroads to "furnish reasonably adequate service and facilities and shall provide and furnish transportation of * * * property upon reasonable requests therefor". Thus, § 4(a) mandates the commission to make sure that the railroads furnish adequate transportation of property.

In order for the commission to fulfill its duty to insure adequate freight service, it must have broad

powers to investigate that service. The Legislature, in § 28 of the railroad act, gave the commission broad information-gathering powers. We may infer from these powers the ability to conduct *sua sponte* investigations. Section 28(a) of the railroad act grants to the commission "the right to obtain from any common carrier all necessary information to enable the commission to perform the duties and carry out the objects for which it is created". MCLA 462.28(a); MSA 22.47(a). Other subsections of § 28, MCLA 462.28; MSA 22.47, also provide broad information-gathering powers: mandatory questionnaires to railroads (subsection [b]); the right to inspect books and papers of common carriers (subsection [c]); and subpoena power over "any books, papers or accounts relating to any matter which is the subject of complaint or investigation". Refusal to comply with commission requests may subject a railroad to a statutory penalty.

We do not agree with the railroad's interpretation of the legislative intent. First, we do not agree with its contention that the commission's authority over freight service is limited to the provisions of § 13(a). Section 13 does not pertain to the adequacy of freight *service*. It regulates service only as it indirectly pertains to the adequacy of freight *depots*. The adequacy of freight service itself is governed by § 4(a), MCLA 462.4; MSA 22.23. As we noted above, § 44 requires the commission to enforce the provisions of § 4(a) consistent with the Legislature's mandate that the commission insure adequate freight service.

The second half of the railroad's interpretation, that the commission can, on its own motion, investigate freight service only as it relates to rates charged, fails in light of *General Telephone Com-*

*pany v Public Service Commission,* 341 Mich 620; 67 NW2d 882 (1954).

If the railroad's interpretation is correct, lowering of freight rates would be the commission's only remedy for inadequate freight service. *General Telephone,* however, held that the commission cannot lower rates as a remedy for inadequate services. Although the Court in *General Telephone* saw rates and services to be related, it held that the commission's statutory power to investigate services was not dependent on the commission's statutory power to investigate rates.

Even more basic is our disagreement with the theory which underlies the railroad's interpretation of the railroad act. The railroad reads the statute to say that, where the section of the law establishes a duty on the railroad, the commission may not, on its own motion, conduct an investigation unless that same section both (1) specifically enables the commission to investigate the railroad's performance of its duty and (2) establishes a specific procedure for the investigation. As we read the statute, it requires specific enabling language and a specific procedure only for actions by consumers. It does not require such specific language for commission action. Whenever the statute gives a consumer the right to intervene into the regulation of railroads, it narrowly specifies the extent of his involvement. The statute gives the commission the duty to enforce the law and broad powers and flexibility to investigate any possible violation of the law. This is also consistent with administrative law policy which provides flexibility to agencies regulating those industries which are affected with a public interest. The railroad business is such an industry. See title to 1939 PA 3.

### Power to Issue Orders

Statutes should be construed with an eye toward

the result, *Magnuson v Kent County Board of Canvassers,* 370 Mich 649; 122 NW2d 808 (1963). Therefore, a reasonable construction should be given which will avoid absurd results. *Kalamazoo Township v Kalamazoo County Clerk,* 339 Mich 619; 64 NW2d 595 (1954).

We find that the commission's ability to issue orders must flow necessarily from the duty to regulate and the power to investigate. The commission's ability to order changes in service is at the heart of its power to regulate. To read § 22 to allow the commission to investigate freight service, but not to issue an order pursuant to its investigation, would cause an absurd result. Even more specifically, the railroad act provides in § 32 for the issuance of an order by the commission any time it conducts an investigation. Section 32 states:

> "Whenever, after hearing and investigation as provided in this act, the commission shall find that any charge, regulation or practice affecting the transportation of passengers or property, or any service in connection therewith not herein specifically designated, is unreasonable or unjustly discriminatory, it shall have the *power to regulate* the same *as provided in § 22* of this act." (Emphasis supplied.) MCLA 462.32; MSA 22.51.

The "power to regulate" to which the section refers, is the power given by § 22(a) to issue orders.

The trial court held that the commission was not authorized to issue or enforce its rule 62. We disagree and reverse the trial court's decision to enjoin the future enforcement of rule 62. Where an agency is empowered to make rules, courts employ a three-fold test to determine the validity of the rules it promulgates: (1) whether the rule is

within the matter covered by the enabling statute; (2) if so, whether it complies with the underlying legislative intent; and (3) if it meets the first two requirements, when it is neither arbitrary nor capricious. Because the conflict here is over the construction of the enabling statute itself, the question of legislative intent must be intertwined with the question of whether the enabling statute covers the rule.

The commission is empowered to make rules by § 2(1) of the railroad act which states:

"The commission shall have the power to adopt and publish rules to govern its proceedings and to regulate the mode and manner of all investigations and hearings of common carriers and other parties before it." MCLA 462.2(1); MSA 22.21(1).

Rule 62 involved in this dispute, provides:

"Whenever a railroad company desires to alter, discontinue, or diminish the quality or quantity of service at or from any agency station, notice of intention to make such change shall be filed with the commission at least 45 days prior to the effective date of such change. Notice shall at the same time be mailed by the railroad company to all railroad patrons and to the clerk or other appropriate official of any city, village, county or township in which such station is located or at which service is rendered from that station. Copies of the notice shall be posted at a prominent place at the station or stations affected. If a protest or request for hearing is not received within 45 days, the railroad company may proceed with tariff filing on statutory notice. If a protest or request for hearing is received within 45 days, or if it otherwise is deemed necessary in the public interest, the commission may at it's discretion schedule for hearing the matter of the reasonableness or adequacy of the proposed service as provided by section 22 of Act No. 300 of the Public Acts of 1909, as amended, being section 462.22 of the Compiled Laws of

1948, and issue it's order in accordance with it's findings."

The trial court's holding that rule 62 is invalid was based on its application of the maxim *expressio unius est exclusio alterius* to § 13(c) of the railroad act. As applied to statutory interpretation, the maxim means that "where a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions". Section 13(c) establishes a specific procedure for the discontinuance of railroad passenger service. It requires that a railroad desiring to discontinue passenger service must petition the commission for approval prior to discontinuing the service. The trial court felt that the Legislature could have also required prior approval for changes in freight service, but did not do so. The trial court reasoned that because the Legislature specifically required that a railroad get prior approval for the discontinuance of passenger service, it had impliedly exempted the railroads from needing prior approval for changes in freight service. Because in the court's opinion, rule 62 required prior approval of changes in freight service, it was not authorized by the enabling statute.

The commission argues that the trial court incorrectly applied the maxim *expressio unius est exclusio alterius.* It also contends that the power to issue and enforce rule 62 stems from the statutory powers to regulate freight stations and services, to conduct investigations and issue orders concerning freight service on its own motion, and to gather information necessary to its regulation of railroads.

We agree with the commission. We feel that the

trial court should not have applied the maxim to this case for two reasons. First, both cases cited by the trial court as controlling, *Taylor v Michigan Public Utilities Commission,* 217 Mich 400; 186 NW 485 (1922), and *Sebewaing Industries Inc v Village of Sebewaing,* 337 Mich 530; 60 NW2d 444 (1953), as well as all other Michigan cases applying the maxim are inapposite to this case.

Here, we are dealing with not one, but two distinct legislative objects, (1) discontinuing passenger service, and (2) altering freight service. Here we are dealing with prescribed means to effect one object, discontinuance of passenger service, but no prescribed means for the other object, altering freight service. Merely because the Legislature explicitly prescribed a procedure for the discontinuance of railroad passenger service does not logically exclude by implication the commission's creation of a different procedure for the alteration of freight service. This is especially true since the commission is specifically mandated to regulate freight service and to promulgate rules which set up a procedure for such regulations.

Second, the application of *"expressio unius"* to this case does violence to legislative intent. The maxim is only an aid to interpreting legislative intent. It cannot govern where legislative intent is opposed to its application. It is clear that the Legislature intended the commission to regulate freight service. Rule 62 is necessary to effectuate legislative intent. Our earlier discussion of the commission's duty to regulate, investigate and issue orders on its own motion needs little further amplification. As previously noted, the primary legislative intent is that of insuring adequate service. By vesting broad police powers, § 44, and broad powers to make rules and regulations, § 2(1)

the Legislature intended to give the commission flexibility in its methods. Also clear is the commission's ability to obtain the information it needs to regulate the railroads. Section 28(a) of the railroad act grants to the commission "the right to obtain from any common carrier all necessary information to enable the commission to perform the duties and carry out the objects for which it is created". MCLA 462.28; MSA 22.47. That section also provides the significant power to subpoena books and records necessary to commission investigations as well as a statutory penalty for any railroad which fails to comply with a commission request for information.

Because rule 62 is designed to provide the commission with the information it needs to regulate freight service, it is consistent with legislative intent, not violative of it.

The trial court viewed rule 62 as requiring the commission's prior approval of changes in freight service. Such prior approval, it felt, was not within the bounds of the enabling statute. We read rule 62 as a notice provision, not as a prior approval requirement. Rule 62 does not require any more approval by the commission than is required by the statute. As we have already decided, the commission may now call a hearing on its own motion, MCLA 462.22; MSA 22.41. Since the commission can investigate proposed changes in freight service on its own, it could, even without rule 62, stay the railroad from changing its freight service until an investigation had been made, a hearing had been held, and an order approving the change had been given. All that rule 62 adds is notice to the commission 45 days in advance of any change. The commission must be able to require such information if it is to fulfill its legislative mandate. It is

axiomatic that the commission cannot regulate the railroads without knowing what the railroads are doing. Without the provision in rule 62 which requires 45-day notice of freight changes, the commission would have to rely on consumer complaints to learn of changes in freight service. As we stressed above, the Legislature created the commission to be a watchdog for consumers. To require the consumer to be a watchdog for the commission would thus be contrary to legislative intent.

Having determined that rule 62 is within the statutory framework and consistent with the legislative intent, the only question remaining is whether the rule is reasonable. *Coffman v State Board of Examiners in Optometry,* 331 Mich 582; 50 NW2d 322 (1951); *Sterling Secret Service, Inc v Department of State Police,* 20 Mich App 502; 174 NW2d 298 (1969). We feel that rule 62 prevents hardship to all parties. If, as it claims, the railroad has a right to make changes in freight service, until a complaint is made, the commission will not know whether the service is adequate until after the changes have been made. If the changes bring about inadequate service, the consumer will have to suffer until corrective measures can be taken. If the railroad changes freight service and is later ordered by the commission to undo the changes, the cost required to return service to status quo ante may be significant. These problems would have been avoided if a decision had been made by the commission before the change in service was effected. Under rule 62, the railroad will know before it makes the change, whether it can proceed with its proposed change in services. The 45-day period will cause no hardship to the railroad. As the railroad itself admitted, the railroad does not

make its changes in service overnight. Indeed, its present practice is to notify all consumers affected by the change in service. Additional notice to the commission should not be any more burdensome than notice to customers.

Affirmed in part, reversed in part.