DONALD E. PERCY, Secretary Department of Health and SocialServices
You request my opinion as to whether an Emergency Medical Technician (ambulance attendant) is excluded from practicing the skills of an Advanced Emergency Technician (paramedic) specified in sec. 146.35 (1), Stats. Second, you ask whether sec. 448.03
(2)(e), Stats., authorizes a person licensed as an Emergency Medical Technician (ambulance attendant) to perform the advanced life support techniques specified in sec. 146.35 (1), Stats., under the direction, supervision, and inspection of a licensed physician.
In answer to your first question, it is my opinion that the Department of Health and Social Services may empower the Emergency Medical Technician (ambulance attendant) to perform those advanced lifesaving techniques which it may designate as "emergency care services" and for which it institutes training standards.
Section 146.50 (1)(c), Stats., defines an "ambulance attendant" as "a person who is responsible for the administration of emergency care procedures, proper handling and transporting of the sick, disabled or injured persons." Ambulance attendants are licensed by the Department of Health and Social Services after presenting evidence of their background and training and successfully completing an examination. Sec. 146.50 (5) and (6) Stats.
An emergency medical technician-advanced (paramedic) is defined in sec. 146.35 (1), Stats., as follows:
 As used in this section, "emergency medical technician — advanced (paramedic)" means a person who is specially trained in emergency cardiac, trauma and other lifesaving or emergency procedures in a training program or course of instruction prescribed by the department and who is examined and licensed by the department as qualified to render the following services:
 (a) Render rescue, emergency care and resuscitation services.
 (b) While caring for patients in a hospital administer parenteral medications under the direct supervision of a licensed physician or registered nurse. *Page 301 
 (c) Perform cardiopulmonary resuscitation and defibrilation on a pulseless, nonbreathing patient.
 (d) Where voice contact with or without a telemetered electrocardiogram is monitored by a licensed physician and direct communication is maintained, upon order of such physician perform the following:
1. Administer intravenous solutions.
2. Perform gastric and endotracheal intubation.
3. Administer parenteral injections.
 (e) Perform other emergency medical procedures prescribed by rule by the department.
I am aware that a strong argument can be made that ambulance attendants may not perform any of the services of paramedics specifically enumerated in sec. 146.35 (1), Stats. Such argument would rest on the principle of statutory construction known asexpressio unius est exclusio alterius. Under this argument, the express enumeration of services in the case of paramedics implies their exclusion in the case of ambulance attendants, especially since the paramedic services are in addition to the provision for "emergency care services," a phrase found both in sec. 146.50 (1)(c) and sec. 146.35 (1)(a), Stats.
The exclusio rule is not a "`Procrustean standard to which all statutory language must be made to conform.'" Columbia HospitalAsso. v. Milwaukee, 35 Wis.2d 660, 669, 151 N.W.2d 750 (1967) There should be some factual evidence that the Legislature intended the exclusio rule to be applied, id., and absent such indication, or if there appears to be some special reason for mentioning one thing and none for mentioning another, Johnson v.General Motors Corporation, 199 Kan. 720, 433 P.2d 585, 589
(1967), and C. O. Ry. Co. v. Mich. Public Serv. Comm.,59 Mich. App. 88, 228 N.W.2d 843, 850 (1975), it may be inappropriate to apply this rule of construction.
Application of the exclusio rule is inappropriate in this case. First, it proves too much. For example, the conclusion that cardiopulmonary resuscitation is not within the meaning of "emergency care services" defies the obvious. Intensive public training programs across the nation have instructed masses of people to perform this service, *Page 302 
and both the Red Cross and the American Heart Association give a certificate of accomplishment in this area.
Second, other indicia of legislative intent show an overall concern to make emergency care services readily available, to establish training programs to equip ambulance attendants and others to provide these services, and to enable the Department to determine the suitability of attendants to perform various services. Chapter 321, sec. 4, Laws of 1973, created sec. 146.50, Stats. It also required the Department to report to the Legislature on the status of emergency medical service plans.Id. sec. 5. The Department was empowered to prescribe a course of instruction and training for attendants, sec. 146.50 (6), Stats; to arrange for courses of instruction sufficient to meet the necessary requirements, sec. 146.50 (9)(a), Stats; the Secretary of the Department was empowered to "adopt rules necessary for administration of this section," sec. 146.50 (3), Stats; applicants must pass an examination "approved by the department," sec. 146.50 (6)(c), Stats; and the applicants must have "additional qualifications as may be required by the department," sec. 146.50 (6)(d), Stats. In addition, the Legislature in sec. 146.70, Stats., has established a statewide emergency services telephone number system in part to enhance the availability of emergency medical and ambulance services. Sec. 146.70 (2) (b), Stats. Under sec. 140.83 (3), Stats., the state has assumed the responsibility of providing technical assistance to area-wide comprehensive health planning services in the development of emergency medical service plans. In sum, the Department has been given broad authority to facilitate the delivery of emergency medical services by training ambulance attendants to acquire new skills and ascertaining the appropriate level of emergency medical services they can provide safely.
It seems more reasonable to believe, then, that in the express enumeration for paramedics, the Legislature merely recited those advanced emergency care services which paramedics by training and experience had come to master. By this express enumeration, the Legislature gave notice to all who would deal with the paramedics — physicians, nurses, and hospital administrators — that it was satisfied with the competence of paramedics to perform these services.
The Legislature, however, did not thereby foreclose the Department from training ambulance attendants to achieve the same level of competence as paramedics in certain emergency care services. *Page 303 
In 67 Op. Att'y Gen. 145 (1978), I stated that the Department's power to adopt rules necessary for the administration of sec. 146.50, Stats., and to institute additional training requirements allows the establishment of training standards above the minimum base skill level, for ambulance attendants. This determination implicitly empowers the recipient of additional training to perform the additional skills mastered. Accordingly, the Department may designate certain advanced lifesaving techniques as "emergency care services" which the ambulance attendant may perform. To ensure that emergency care service is provided by qualified persons, the Department should also institute training standards for those additional services which it determines the ambulance attendant may perform.
Your second question is whether an ambulance attendant may perform the advanced lifesaving techniques specified as appropriate for paramedics in sec. 146.35 (1), Stats., when functioning under the direction, supervision, and inspection of a licensed physician, pursuant to sec. 448.03 (2), Stats.
In my opinion the answer is yes with two qualifications. First, the Department by rule can circumscribe the services attendants can perform under the direction of a physician. Second, absent such a limiting rule, the extent to which a physician can direct an attendant to perform services is under the control of the Medical Examining Board, its rules and the statutes it administers. Similarly, the extent to which an attendant may accept such direction from a physician remains under the control of the Department.
In addition to the Department's control over the licensure of attendants under sec. 146.50, Stats., the relevant statutes in considering this question are sec. 448.03 (1), (2)(a), (2)(e), and (2)(i), Stats., and sec. 448.01 (11), Stats.
Section 448.03 (1), Stats., provides:
 (1) License required to practice. No person may practice medicine and surgery, podiatry or physical therapy, or attempt to do so or make a representation as authorized to do so, without a license granted by the [Medical Examining] board. *Page 304 
Section 448.03 (2)(a), (e), and (i), Stats., provide:
 (2) Exceptions. Nothing in this chapter shall be construed either to prohibit, or to require a license or certificate under this chapter for any of the following:
 (a) Any person lawfully practicing within the scope of a license . . . under any other statutory provision, or as otherwise provided by statute.
. . . .
 (e) Any person providing patient services as directed, supervised and inspected by a physician or podiatrist who has the power to direct, decide and oversee the implementation of the patient services rendered.
. . . .
 (i) Any person furnishing medical assistance or first aid at the scene of an emergency.
Section 448.01 (11), Stats., defines "unprofessional conduct" as those acts or attempted acts defined as unprofessional conduct by the Medical Examining Board, and sec. 448.02, Stats., empowers the Board to take disciplinary action against physicians guilty of unprofessional conduct.
In addition to these statutes, your attention is drawn to Wis. Adm. Code section Med 10.02 (1)(j) which classifies as unprofessional conduct the aiding or abetting of another in practicing or attempting to practice "under any license beyond the scope of that license."
Given the scope of the Department's powers over ambulance attendants, I am persuaded that the Department has authority to set the outer limits of services which the attendants may perform. In exercising that power, the Department must be guided by the overall legislative purposes to safely deliver emergency care services. It also must consider the relative training of paramedics and attendants and with due regard for the standards of the Medical Examining Board.
Nothing in ch. 448, Stats., or elsewhere empowers a physician or the Medical Examining Board to permit an attendant to do what the Department forbids. The provision in sec. 448.03 (2) (i), Stats., that the furnishing of medical assistance or first aid at the scene of an *Page 305 
emergency does not constitute the practice of medicine, does not authorize an attendant to violate Department rules restricting what he or she can do at the scene of an emergency. Similarly, the provision in sec. 448.03 (2)(e), Stats., that one is not guilty of practicing medicine without a license when acting under the direction of a physician, does not authorize an attendant to violate Department restrictions on what services he or she can perform under the direction of a physician. The Department regulates the attendants, not the Medical Examining Board. The Board could find it permissible for a physician to delegate a certain service to an attendant, but the Department would remain free to discipline the attendant for performing the service notwithstanding physician authorization. (As noted, the Medical Examining Board considers it unprofessional for a physician to assist another in acting beyond the scope of his or her license.) Conversely, the Department could conclude that a certain service may be performed by an attendant if done under the direction of a physician, but the Medical Examining Board is free to discipline a physician for delegating that service to the attendant.
It is clear, however, that sec. 448.03 (2)(e), Stats., does not give the physician unlimited authority to delegate service to attendants. The contrary interpretation would lead to the absurd result that a physician may direct an attendant to perform open-heart surgery. Rather, the physician, in deciding what services may be performed by an attendant, must consider all the facts and circumstances, including the complexity of the service, the attendant's past training and experience, the standards of the Medical Examining Board, and the general norms of the medical profession in similar situations. Similarly, the attendant must exercise independent judgment. Although a physician's assurance that the attendant is capable of performing a service under supervision is a fact on which the attendant may place some reliance, the attendant is answerable to the Department and must take account of his or her own limitations. Unquestionably, the Department's exercise of its rule-making authority could illuminate this very ill-defined area. Until the Department fashions appropriate rules, resolution of this issue must be done on a case-by-case basis.
BCL:CDH *Page 306