*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIGHTMOORE GARDENS, LLC, 420
FACTORY, LLC, HCM PROVISIONING, INC.,
PLAN B WELLNESS CENTER, LLC, 19533 WEST
WARREN, INC., 13775 BUENA VISTA, LLC,
ALTERNATIVE GARDENS, LLC, NO LIMIT
INVESTMENT GROUP, LLC, LARREN
INVESTMENTS, LLC, INHALE, LLC, and WL
GREEN VENTURES, INC.,

       Plaintiffs-Appellants,

v

MARIJUANA REGULATORY AGENCY,

       Defendant-Appellee.

FOR PUBLICATION
May 6, 2021
9:05 a.m.

No.  353698
Court of Claims
LC No.  20-000029-MB

UTOPIA GARDENS, LLC and CLARK STREET
INVESTMENT GROUP, INC.,

       Plaintiffs-Appellants,

v

MARIJUANA REGULATORY AGENCY,

       Defendant-Appellee.

Nos.  353739
Court of Claims
LC No.  20-000028-MB

Before:  JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

GADOLA, J.

In these consolidated appeals, plaintiffs appeal as of right the orders of the trial court granting defendant, the Marijuana Regulatory Agency (MRA), summary disposition under MCR 2.116(C)(8) of their claims under the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq.* We affirm.

## I. FACTS

In both consolidated appeals, plaintiffs are applicants who sought to obtain licenses to operate commercial marijuana establishments in either Detroit or Traverse City. Defendant denied each plaintiff's application after the municipality where the proposed establishment was to be located refused to approve the application, though at the time the applications were submitted to defendant local ordinances in those municipalities did not prohibit the establishments. Plaintiffs contend that the emergency rules under which defendant denied the applications were invalid because they were contrary to the MRTMA.

By way of background, the MRTMA is a 2018 voter-initiated law that generally decriminalizes the possession and use of marijuana for persons 21 years old or older, and provides for the legal production and sale of marijuana. See MCL 333.27952. Under § 6 of the MRTMA, MCL 333.27956, a municipality may "opt out" of the act by enacting an ordinance prohibiting marijuana establishments within the municipality. That same statutory section permits a municipality that does not opt-out to impose reasonable restrictions on marijuana establishments within the municipality.

Initially, the act vested the Department of Licensing and Regulatory Affairs (LARA) with the responsibility to implement the act, MCL 333.27957(1); MCL 333.27953(b), including the responsibility to promulgate rules "pursuant to section 8 of this act [MCL 333.27958] that are necessary to implement, administer, and enforce this act." MCL 333.27957(1)(a). However, Executive Reorganization Order No 2019-02,[1] created defendant, the MRA, within LARA and transferred to the MRA "the authorities, powers, duties, functions and responsibilities" of LARA under Michigan's marijuana laws.[2]

Among the powers and duties transferred to defendant was the power and the duty to promulgate rules under the MRTMA to implement and administer the act, MCL 333.27958(1), including "procedures for issuing a state license pursuant to section 9 [MCL 333.27959]." Section 9 of the MRTMA provides, in relevant part:

> 1. Each application for a state license must be submitted to the department. Upon receipt of a complete application and application fee, the department shall forward

---

[1] "Executive Reorganization Order No. 2019-2 was promulgated March 1, 2019, as Executive Order No. 2019-7, and became effective May 1, 2019." MCL 333.27001.

[2] Specifically, the Michigan Medical Marihuana Act, MCL 333.26421 *et seq.*, the Medical Marihuana Facilities Licensing Act, MCL 333.27101 *et seq.*, the Marihuana Tracking Act, MCL 333.27901, *et seq.*, and the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 *et seq.*

-2-

a copy of the application to the municipality in which the marihuana establishment is to be located, determine whether the applicant and the premises qualify for the state license and comply with this act, and issue the appropriate state license or send the applicant a notice of rejection setting forth specific reasons why the department did not approve the state license application within 90 days.

\* \* \*

3. Except as otherwise provided in this section, the department shall approve a state license application and issue a state license if:

(a) the applicant has submitted an application in compliance with the rules promulgated by the department, is in compliance with this act and the rules, and has paid the required fee;

(b) the municipality in which the proposed marihuana establishment will be located does not notify the department that the proposed marihuana establishment is not in compliance with an ordinance consistent with section 6 of this act [MCL 333.27956] and in effect at the time of application; . . . [MCL 333.27959.]

After being vested with the power and the duty to administer the MRTMA, the MRA issued emergency rules that were in effect at the times relevant to the events in these cases.[3] Included in these emergency rules was Emergency Rule 8, which set forth the application requirements for a state license to operate a marijuana establishment. Emergency Rule 8 provided, in relevant part:

(1) A complete application for a state license must include all the information specified in Rule 7 and all of the following:

\* \* \*

(e) Confirmation of compliance with any municipal ordinances the municipality may have adopted under section 6 of the act, MCL 333.27956. For purposes of these rules, confirmation of compliance must be on an attestation form prepared by the agency that contains all of the following information:

(*i*) Verification that the municipality has not adopted an ordinance prohibiting marihuana establishments.

(*ii*) Description of any regulations within the municipality that apply to the proposed marihuana establishment.

---

[3] In June 2020, defendant issued permanent rules that replaced the emergency rules. See Mich Admin Code, R 420.1 *et seq.*

-3-

(*iii*) The date and signature of the clerk of the municipality or his or her designee on the attestation form attesting that the information stated in the document is correct.

An applicant's failure to comply with Emergency Rule 8 could result in denial of the license under Emergency Rule 14, which provided, in relevant part:

(2) In addition to the reasons for denial in the act, a state license may be denied by the agency for any of the following reasons:

* * *

(c) The applicant has failed to comply with these rules and the application requirements pursuant to Rules 6, 7, and 8.

* * *

(f) The applicant failed to satisfy the confirmation of compliance by a municipality requirement in accordance with these rules.

In addition, Emergency Rule 9 provided, in relevant part:

(2) An applicant is ineligible to receive a state license if any of the following circumstances exist:

* * *

(g) The agency determines the municipality in which the applicant's proposed marihuana establishment will operate has adopted an ordinance that prohibits marihuana establishments or that the proposed establishment is noncompliant with an ordinance adopted by the municipality under section 6 of the act, MCL 333.27956.

Defendant created application materials that included the "Attestation 2-C" form, which required the notarized signature of the clerk of the municipality after checking one of three boxes verifying that (1) the municipality has not adopted an ordinance prohibiting adult-use marijuana establishments, or (2) the municipality has an ordinance allowing adult-use marijuana establishments and the applicant is not in violation of the ordinance, or (3) the municipality has adopted an ordinance allowing adult-use marijuana establishments and the applicant is in violation of the ordinance.

On October 31, 2019, through November 4, 2019, the plaintiffs in this case seeking to license marijuana establishments in Detroit sought to obtain the signature of Detroit's city clerk. The parties do not dispute that at that time, Detroit did not have an ordinance in place prohibiting marijuana establishments under the MRTMA. Nonetheless, the Detroit city clerk refused to sign the Attestation 2-C form as requested by plaintiffs. Of the plaintiffs applying to license marijuana establishments in Detroit, all but two submitted their applications to defendant without the verification of the city clerk on either November 1, 2019, or November 4, 2019, but with affidavits

-4-

asserting that the city clerk had refused to sign the Attestation 2-C.[4]  On November 12, 2019, Detroit adopted an ordinance prohibiting marijuana establishments in Detroit.

By letters dated January 29, 2020, defendant denied the Detroit applicants' applications for licensure under MCL 333.27959(3)(a) and (b), and Emergency Rules 9(2)(g), 14(2)(c), and 14(2)(f).  The denial letters stated the basis for the denials as the failure of the applications to comply with Emergency Rule 8(1)(e) because they failed to include the signature of the Detroit city clerk on Attestation 2-C verifying that the municipality had not adopted an ordinance prohibiting marijuana establishments.  This failure resulted in denial under Emergency Rule 14(2)(c) (failure to comply with Emergency Rule 8) and under Emergency Rule 14(2)(f) (failure to obtain confirmation of municipal compliance).  Because the applications were not filed in compliance with defendant's rules, defendant further denied each plaintiff's license under § 9(3)(a) of the act, MCL 333.27959(3)(a).  Defendant also denied each license under § 9(3)(b) of the act, MCL 333.27959(3)(b), and Emergency Rule 9(2)(g), on the basis that the City of Detroit had notified defendant that each proposed establishment was not in compliance with the city's ordinance prohibiting the establishments under § 6 of the MRTMA.[5]

Plaintiff WL Green Ventures, Inc. applied for licensure of a marijuana establishment in Traverse City on December 8, 2019.  Traverse City's ordinance prohibiting marijuana establishments had lapsed on December 6, 2019.  The parties do not dispute that the Traverse City city clerk refused to sign Attestation 2-C for inclusion in WL Green Ventures, Inc.'s application. The city adopted a new opt-out ordinance on December 13, 2019.  By letter dated February 18, 2020, defendant denied WL Green Ventures, Inc.'s application under Emergency Rule 14(2)(c) and (f) for failure to comply with Emergency Rule 8(1)(e) by obtaining the signature of the city clerk on Attestation 2-C, under MCL 333.27959(3)(a) for failure to comply with the agency rules, and under MCL 333.27959(3)(b) and Emergency Rule 9(2)(g) for failure to comply with the city's ordinance prohibiting marijuana establishments.[6]

Plaintiffs initiated these actions in the Court of Claims,[7] seeking declaratory judgment that Emergency Rules 8(1)(e), 9(2)(g), and 14(2)(f) were invalid because they are contrary to the MRTMA.  Defendant moved for summary disposition under MCR 2.116(C)(4) and (8), arguing that the trial court lacked subject matter jurisdiction because plaintiffs had failed to exhaust their

---

[4] The remaining two plaintiffs applying to license marijuana establishments in Detroit delayed allegedly while attempting to obtain the clerk's signature, and eventually submitted their applications without the clerk's signature on November 20, 2019, and November 22, 2019.

[5] Defendant also denied the application of plaintiff HCM Provisioning, Inc. on the additional basis that the applicant did not pass prelicensure inspection.

[6] Defendant also denied the application of plaintiff WL Green Ventures, Inc. on the additional basis that the applicant did not pass prelicensure inspection.

[7] Plaintiffs also initiated administrative review of defendant's decisions by requesting a public investigative hearing before an administrative law judge, under Mich Admin Code, R 420.707; R 420.703(10).

administrative remedies and that plaintiffs had failed to state a claim. The trial court determined that summary disposition was not warranted under MCR 2.116(C)(4), accepting plaintiffs' argument that exhausting their administrative remedies would be futile, but granted defendant's motion for summary disposition in each of the consolidated cases under MCR 2.116(C)(8), dismissing the complaints for failure to state a claim and rejecting plaintiffs' contention that the agency's rules were invalid. Plaintiffs now appeal the respective orders of the trial court.[8]

## II. ANALYSIS

Plaintiffs contend that the trial court erred by granting defendant summary disposition under MCR 2.116(C)(8). Plaintiffs argue that contrary to the holding of the trial court, certain of defendant's emergency rules were invalid because they conflict with the intent of the MRTMA, as well as the directive of § 9 of the act. We disagree.

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim. *Id*. at 159. When reviewing a motion for summary disposition granted under MCR 2.116(C)(8), we accept all factual allegations as true and consider the motion based upon the pleadings alone. *Id*. at 160. Summary disposition under MCR 2.116(C)(8) is warranted only when the claim is so unenforceable that no factual development could possibly justify recovery. *Id*.

We also review de novo issues of statutory interpretation, *Cox v Hartman*, 322 Mich App 292, 298; 911 NW2d 219 (2017), as well as the scope of an administrative agency's statutory rulemaking authority, whether an agency exceeded its authority, whether an administrative rule is arbitrary and capricious, and whether an administrative rule comports with the Legislature's intent. *Emagine Entertainment, Inc v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 350376, 350881); slip op at 1.

Administrative agencies have authority to interpret the statutes they administer and enforce. *Clonlara, Inc v State Board of Ed*, 442 Mich 230, 240; 501 NW2d 88 (1993). Courts respectfully consider an agency's interpretation of a statute that it is empowered to execute, and will not overrule that construction absent cogent reasons. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008). But although an agency's interpretation of the statute it administers is entitled to respectful consideration, it cannot conflict with the intent of the Legislature as expressed in the language of the statute. *Id*. Because the statutory language itself controls, this Court's ultimate concern is the proper construction of the plain language of the statute regardless of the agency's interpretation, *id*. at 108, and the primary obligation is to discern and give effect to the Legislature's intent. *City of Coldwater v Consumers Energy Co*, 500 Mich 158, 167; 895 NW2d 154 (2017).

---

[8] This Court granted the joint motion of the parties and consolidated the appeals. *Brightmoore Gardens, LLC v Marijuana Regulatory Agency*, unpublished order of the Court of Appeals, entered June 24, 2020 (Docket Nos. 353698, 353739).

A rule adopted by an agency in accordance with the Administrative Procedures Act, MCL of 1969, MCL 24.201 *et seq.*, is considered a "legislative rule" and has the force and effect of law. *Clonlara*, 442 Mich at 240. But although the rule-making power of an administrative agency has been described as quasi-legislative, an agency is not empowered to change law enacted by the Legislature. *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 47; 869 NW2d 810 (2015), citing *Rovas*, 482 Mich at 98. When an administrative rule conflicts with a statute, the statute controls. *Emagine Entertainment, Inc*, ___ Mich App at ___; slip op at 2; see also *Grass Lake Improvement Bd v Dep't of Environmental Quality*, 316 Mich App 356, 366; 891 NW2d 884 (2016). An agency's legislative rule may be determined to be invalid when the rule goes beyond the parameters of the enabling statute, when the rule does not comply with the legislative intent underlying the enabling statute, or when the rule is arbitrary or capricious. *Slis v Michigan*, 332 Mich App 312, 346; ___ NW2d ___ (2020). Our Supreme Court has summarized:

> Where an agency is empowered to make rules, courts employ a three-fold test to determine the validity of the rules it promulgates: (1) whether the rule is within the matter covered by the enabling statute; (2) if so, whether it complies with the underlying legislative intent; and (3) if it meets the first two requirements, when *[sic]* it is neither arbitrary nor capricious. [*Ins Institute of Mich v Comm'r of the Office of Fin & Ins Serv*, 486 Mich 370, 385; 785 NW2d 67 (2010), quoting *Chesapeake & Ohio R Co v Pub Serv Comm*, 59 Mich App 88, 98-99; 228 NW2d 843 (1975).]

In these cases, plaintiffs challenge as invalid defendant's Emergency Rules 8(1)(e), 9(2)(g), 14(2)(c), and 14(2)(f),[9] under which defendant denied plaintiffs' applications. Specifically, the notice of denial that most plaintiffs in these cases received stated, in relevant part:

> Applicant submitted Attestation 2-C, Confirmation of Section 6 Compliance, as part of its application. However, contrary to MRTMA Emergency Rule 8(1)(e), the attestation did not contain verification that the municipality has not adopted an ordinance prohibiting marijuana establishments and did not contain the signature of the municipality clerk or designee. Instead, applicant submitted an affidavit stating that the applicant was unable to obtain a municipality representative's signature on Attestation 2-C.
>
> * * *
>
> The municipality later provided the MRA with a Municipal Confirmation of Section 6 Compliance form dated December 3, 2019, on which the deputy city clerk attested that "[t]he municipality has completely prohibited marijuana establishments under Section 6 of the MRTMA" and "[t]he applicant is not in

---

[9] This Court has held that an agency's emergency rules may be challenged under § 64 of the Administrative Procedures Act, MCL 24.264, in the same manner as other rules. See *Slis v State*, 332 Mich App 312, 341-342; ___ NW2d ___ (2020).

compliance with municipal zoning regulations and ordinances regulating marihuana establishments."

Based on the above, the MRA does not approve the application for the following reasons:

Applicant failed to include in its application confirmation of compliance with any municipal ordinances the municipality may have adopted under section 6 of the MRTMA, contrary to MRTMA Emergency Rule 8(1)(e). Thus, applicant's application may be denied under MRTMA Emergency Rules 14(2)(c) and (f).

Applicant failed to submit an application in compliance with the rules promulgated by the MRA. Thus, applicant is ineligible for licensure under MCL 333.27959(3)(a).

The municipality in which the applicant will be located, the City of Detroit, notified the MRA that the proposed establishment is not in compliance with an ordinance consistent with section 6 of the MRTMA. Thus, applicant is ineligible for licensure under MCL 333.27959(3)(b).

Applicant's proposed establishment is noncompliant with an ordinance adopted by the City of Detroit under section 6 of the MRTMA. Thus, applicant is ineligible to receive a state license under MRTMA Emergency Rule 9(2)(g). Therefore, the MRA denies applicant's application for a state marijuana establishment license under MCL 333.27959(3)(a) and (3)(b) and MRTMA Emergency Rules 9(2)(g), 14(2)(c), and 14(2)(f).

Defendant thus determined that plaintiffs' applications were incomplete under Emergency Rule 8(1)(e) because they lacked the signature of the municipal clerk on Attestation 2-C. Because the applications were deemed incomplete under Emergency Rule 8 for failure to include the municipal clerk's certification, defendant denied the applications under Emergency Rule 14(2)(c) and (f). As noted, that rule provided, in relevant part:

(2) In addition to the reasons for denial in the act, a state license may be denied by the agency for any of the following reasons:

* * *

(c) The applicant has failed to comply with these rules and the application requirements pursuant to Rules 6, 7, and 8.

* * *

(f) The applicant failed to satisfy the confirmation of compliance by a municipality requirement in accordance with these rules.

-8-

Defendant further denied the applications under Emergency Rule 9(2)(g), which provided:

> (2) An applicant is ineligible to receive a state license if any of the following circumstances exist:
>
> * * *
>
> (g) The agency determines the municipality in which the applicant's proposed marihuana establishment will operate has adopted an ordinance that prohibits marihuana establishments or that the proposed establishment is noncompliant with an ordinance adopted by the municipality under section 6 of the act, MCL 333.27956.

Plaintiffs contend that the agency rules in question violate the second prong of the validity test because the rules are contrary to the intent of the MRTMA. The purpose of the MRTMA is set forth in the act as follows:

> The purpose of this act is to make marihuana legal under state and local law for adults 21 years of age or older, to make industrial hemp legal under state and local law, and to control the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved. The intent is to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older; remove the commercial production and distribution of marihuana from the illicit market; prevent revenue generated from commerce in marihuana from going to criminal enterprises or gangs; prevent the distribution of marihuana to persons under 21 years of age; prevent the diversion of marihuana to illicit markets; ensure the safety of marihuana and marihuana-infused products; and ensure security of marihuana establishments. To the fullest extent possible, this act shall be interpreted in accordance with the purpose and intent set forth in this section. [MCL 333.27952.]

The MRTMA requires that the act "shall be broadly construed to accomplish its intent as stated in section 2 of [the] act." MCL 333.27967.

Here, plaintiffs specifically contend that Emergency Rule 8(1)(e) is invalid because it (1) ignores the language of the MRTMA, (2) it is an unlawful delegation of authority to municipalities not contemplated by the MRTMA, and (3) it is unreasonably impractical because the rule requires applicants to obtain the municipal clerk's signature. Plaintiffs argue that because Emergency Rule 8(1)(e) is invalid, Emergency Rule 14(2)(c) and (f), which permit defendant to deny an application for failure to comply with Emergency Rule 8, also are invalid. Plaintiffs contend that Emergency Rule 9(2)(g) is invalid because it ignores the language of § 9 of the act, MCL 333.27959, which permits denial of a license to an otherwise eligible applicant only if a municipality asserts that the application violates an ordinance of the municipality "in effect at the time of application," while defendant's rule instead permits defendant to consider merely whether the municipality "has adopted an ordinance that prohibits marihuana establishments."

The trial court determined that summary disposition of plaintiffs' claims was warranted under MCR 2.116(C)(8), finding that the emergency rules were valid and plaintiffs therefore had

failed to state a claim. The trial court rejected plaintiffs' contention that the emergency rules conflicted with the directive of § 9 of the act that the agency must issue a license to an otherwise eligible applicant unless prohibited by an ordinance "in effect at the time of application." The trial court concluded that the emergency rules were silent about the time frame of an opt-out ordinance, that silence could not be used to presume the invalidity of a rule, and that there was no support in § 9 of the act for plaintiffs' claim that "because neither Detroit nor Traverse City had an opt-out ordinance in effect as of the date the plaintiffs' application packets were filed with the MRA, they had a right to issuance of licenses." The trial court further reasoned that plaintiffs' applications were incomplete as defined by the emergency rules because they lacked a signed Attestation 2-C, and that the incomplete applications did not entitle them to licenses under § 9 of the act regardless of when the municipal ordinances were enacted.

Our Supreme Court has directed that "[w]e begin all matters of statutory interpretation with an examination of the language of the statute." *Nickola v MIC Gen Ins Co*, 500 Mich 115, 123; 894 NW2d 552 (2017). When interpreting a statute, a court's primary task is to ascertain and give effect to the intent of the Legislature. *City of Coldwater*, 500 Mich at 167. This Court first considers the statutory language itself; if the language is unambiguous, we will conclude that the Legislature intended the clearly expressed meaning and enforce the statute as written, *Ford Motor Co v Dep't of Treasury*, 496 Mich 382, 389; 852 NW2d 786 (2014), because the language of the statute provides "the most reliable evidence of its intent," *City of Coldwater*, 500 Mich at 167.

Plaintiffs contend that the four agency rules that resulted in their applications being denied conflict with the intent of the act, and particularly with § 9, MCL 333.27959. As noted, that statutory section provides, in relevant part:

1. Each application for a state license must be submitted to the department. Upon receipt of a complete application and application fee, the department shall forward a copy of the application to the municipality in which the marihuana establishment is to be located, determine whether the applicant and the premises qualify for the state license and comply with this act, and issue the appropriate state license or send the applicant a notice of rejection setting forth specific reasons why the department did not approve the state license application within 90 days.

* * *

3. Except as otherwise provided in this section, the department **shall** approve a state license application and issue a state license if:

(a) the applicant has submitted an application in compliance with the rules promulgated by the department, is in compliance with this act and the rules, and has paid the required fee;

(b) the municipality in which the proposed marihuana establishment will be located does not notify the department that the proposed marihuana establishment is not in compliance with an ordinance consistent with section 6 of this act [MCL 333.27956] and **in effect at the time of application**; . . . [MCL 333.27959 (emphasis added).]

-10-

Thus, under § 9 of the act, if the municipality does not notify the agency that the otherwise eligible applicant is in violation of an ordinance in effect at the time of application, the agency "shall" approve the license. Plaintiffs argue that the language of § 9 is clear that "in effect at the time of application" means the date on which the application is submitted, and that because the statutory language is plain no further interpretation or construction is necessary or permitted. Defendant, however, contends that the statutory language should be construed to mean any ordinance in effect within the 90-day statutory window during which defendant must consider and decide upon an application.

Emergency Rule 9(2)(g) provides that an applicant is ineligible to receive a state license if the agency determines that the municipality in which the applicant's proposed marijuana establishment will operate "has adopted an ordinance that prohibits the marihuana establishment." Although Emergency Rule 9(2)(g) says something different than § 9 of the act, MCL 333.27959, it is not directly in conflict with § 9. Section 9 of the act says that defendant *shall* grant a license to an otherwise eligible applicant if the municipality does not notify defendant that the application is not in compliance with a municipal ordinance *in effect at the time of application*, thereby placing a duty to issue a license upon defendant under certain circumstances, and placing a temporal limitation on ordinances that meet the statutory requirement. Emergency Rule 9(2)(g) says that an applicant *is ineligible* for a license if defendant determines that the municipality *has adopted an ordinance that prohibits marihuana establishments*, but does not impose a specific temporal limitation.

A statute is not ambiguous merely because a term is undefined or has more than one definition, but ambiguity exists if statutory language "is equally susceptible to more than a single meaning." *Tomra of North America v Dep't of Treasury*, 325 Mich App 289, 299; 926 NW2d 259 (2018) (quotation marks and citation omitted). Because "what is plain and unambiguous often depends on one's frame of reference," *US Fidelity & Guaranty Co v Michigan Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009) (quotation marks and citations omitted), this Court reads a statute "as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined." *In re Receivership of 11910 South Francis Rd*, 492 Mich 208, 222; 821 NW2d 503 (2012).

The words "in effect at the time of application" are undefined in the act, but have a general or common understanding. The words therefore may lend themselves to more than one possible meaning, and the context must be considered to determine the most apt meaning. See *West Mich Annual Conference of United Methodist Church v Grand Rapids*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 352703); slip op at 8 n 11. In doing so, we conclude that although "in effect at the time of application" could have more than one possible meaning, the phrase has one probable meaning. "At the time of" is commonly defined as "when (something) happened," for example, "It was raining at the time of the accident." See Merriam-Webster.com Dictionary, Merriam-Webster <https://www.merriam-webster.com/dictionary> (accessed March 30, 2021). In § 9 of the act, the Legislature stated "in effect at the time of application," and then gave the agency 90 days in which to consider and act upon the application. Applying the common definition, this language means "when the application happened." Because the application was subject to consideration for 90 days before being granted or denied, the application was "happening" within that 90-day window. In other words, the statute creates a 90-day application period, leading us to conclude that the "time of application" is any time within that 90-day period,

which begins on the date the application is submitted. Furthermore, because the statute requires the agency to issue a license so long as the municipality has not certified the existence of an ordinance barring retail marijuana establishments, this strongly suggests to us that the converse is likewise true—the agency must reject an application if such a municipal certification is received at any time during the 90-day application period. This would be in keeping with the statute's intent to allow municipalities to bar or limit retail marijuana establishments.

In addition, in § 9 and § 16 of the act, the Legislature used the terms "upon receipt of" or "after receipt of" to indicate the specific time at which an application is submitted. See MCL 333.27959(1), (5); MCL 333.27966(2). Neither of these phrases appears in Section 9(3)(b) of the act. The Legislature's use of different terms within the same statute is generally interpreted to connote distinctive meanings. *Honigman Miller Schwartz & Cohn LLP v City of Detroit*, 505 Mich 284, 317; 952 NW2d 358 (2020). Plaintiffs' contention that Emergency Rule 9(2)(g) is invalid because it conflicts with § 9 of the act therefore is without merit.

Plaintiffs also challenge the trial court's rejection of their contention that Emergency Rules 8 and 14 are invalid. The trial court reasoned that the rules are a valid implementation of the act because MCL 333.27959(1) contemplates cooperation between the agency and municipalities. We agree that the MRTMA envisions cooperation between defendant and municipalities. To effectuate that intent, the emergency rules in question give municipalities authority to alert defendant regarding whether the municipality has enacted an ordinance prohibiting the proposed establishment, and whether the applicant has complied with that ordinance. Further, in general, the law to be applied is the law in effect at the time of the decision by the [agency], see *Grand/Sakwa of Northfield, LLC v Northfield Twp*, 304 Mich App 137, 141; 851 NW2d 574 (2014), and thus defendant properly considered the municipal ordinances in effect at the time of rendering the decisions on plaintiffs' applications.

We acknowledge the merit of plaintiffs' challenge to the requirement of Emergency Rule 8(1)(e)(*iii*) that an applicant obtain the verification of the municipal clerk. That requirement imposes upon applicants a task that is not within the power of the applicants to fulfill given that an applicant has no authority to compel a municipal clerk to verify the applicant's application. As a result, the verification requirement is subject to potential abuse and may be unlawful; a municipal clerk could withhold verification from an applicant even if an ordinance were never adopted by the municipality during the application process, or could withhold verification from one applicant, but not another. Here, the clerks refused to confirm that the municipalities did not have valid ordinances prohibiting adult-use marijuana establishments at the time the clerks' signatures were sought, even though the municipalities did not have valid ordinances at those times, and defendant refused to accept the applications without the clerks' signatures. Because Emergency Rule 8(1)(e)(*iii*) does not provide an avenue for an applicant to complete an application when a clerk refuses to provide a signature, it is prone to abuse. However, under the circumstances of this case, we need not consider whether the rule is arbitrary and capricious. Plaintiffs' applications were properly rejected on the basis that the municipalities adopted ordinances precluding the establishments while the applications were under consideration, rendering the clerks' refusals to verify the applications irrelevant.

In summary, the MRTMA provides for the issuance of licenses to eligible applicants for marijuana establishments for the purpose of selling marijuana legally to persons 21 years old or

older. The duty and power to administer the MRTMA, and to make rules to implement the act, was assigned to defendant. The act provides municipalities the power to opt-out of the act or to impose certain restrictions on marijuana establishments within the municipality. Defendant's emergency rules effectuated this intent by giving municipalities sufficient time to opt-out or regulate marijuana establishments during the 90-day window in which the application is considered by defendant. The trial court did not err by granting defendant summary disposition under MCR 2.116(C)(8) because defendant's Emergency Rule 9(2)(g) was not invalid.

Affirmed.


/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause