THOMAS BROS, INC v SECRETARY OF STATE

Docket No. 77-3532. Submitted June 7, 1978, at Lansing.—Decided
May 21, 1979. Leave to appeal applied for.

Thomas Bros., Inc., Leonard V. Sweet doing business as Sweet's
Garage, and Russ Zuker Tire Service, Inc., which are motor
vehicle repair facilities, brought a class action on behalf of
themselves and all others similarly situated against the Secre-
tary of State and the Director of the Bureau of Automotive
Regulation to recover registration fees collected from the plain-
tiffs pursuant to the Motor Vehicle Service and Repair Act.
Under the act, the Bureau of Automotive Regulation had
promulgated rules establishing a fee schedule based upon three
factors. Before those rules went into effect, the Legislature
amended the act, changing the language and the upper and
lower limits of the amount the bureau could charge each repair
facility. The bureau then promulgated emergency rules which
set forth a new fee schedule, based upon only one factor, the
gross annual revenue from repairs for the last tax year. These
emergency rules expired by action of law six months later.
After expiration of the emergency rules, the bureau continued
collecting fees according to the one-factor fee schedule. It was
at this time that the action was filed. The Ingham Circuit
Court, James T. Kallman, J., found that the one-factor fee
schedule was not valid under the act. The bureau thereupon
promulgated new emergency rules basing the fee schedule upon
the three factors mentioned in the act. Upon rehearing, the
circuit court affirmed its original holding, and held that all fees
collected under the one-factor fee schedule were collected ille-
gally, granted summary judgment for the plaintiffs, and or-
dered a refund of the fees paid. The defendants appeal. *Held:*

1. The plaintiffs were not collaterally estopped from challeng-
ing the fee schedule by reason of a judgment in a prior case.

2. The bureau was empowered to promulgate the one-factor

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes §§ 145, 146.
[2, 4] 2 Am Jur 2d, Administrative Law §§ 296-298, 303, 304.
[3] 2 Am Jur 2d, Administrative Law §§ 306, 307.
[5] 51 Am Jur 2d, Licenses and Permits §§ 39, 79.
[6] 1 Am Jur 2d, Administrative Law § 129.

fee schedule. The statutory language which provides that a fee schedule be based upon "such factors as the size of the facility, number of mechanics employed, and volume of repair work performed" does not require that the fees be based upon those three factors, so long as they are based upon a factor or factors like those specified. Gross annual revenue obtained from repairs is a measure of the volume of repair work performed.

3. The fees based upon gross revenue obtained from repairs bear a substantial relationship to the purposes of the act, and are not arbitrary or capricious.

4. The emergency rules using the one-factor fee schedule were valid and those repair facilities which paid the fees during the six-month period during which those rules were in effect are not entitled to refunds.

5. The absence of fee rules from the expiration of the first emergency rules to the time of adoption of the three-factor fee schedule following the court's first opinion did not operate to deprive the bureau of its authority to collect fees, but made it impossible to determine lawfully the precise fees due. Therefore, fees for that time period must be redetermined by the bureau using a fee schedule embodied in validly promulgated permanent rules. Adjustments in the fees paid during that time shall be made according to the new rules promulgated.

Affirmed in part, reversed in part, and remanded.

1. APPEAL AND ERROR — STATUTES — CONSTRUCTION OF STATUTES — LEGISLATIVE INTENT.

The Court of Appeals, in construing a statute, seeks to determine and give force to the Legislature's intent in enacting the statute.

2. ADMINISTRATIVE LAW — AGENCIES — RULES — VALIDITY — TEST.

The validity of rules promulgated by an agency empowered to make rules is determined by application of a three-part test: (1) whether the rule is within the matter covered by the statute enabling the agency to make rules; (2) if so, whether the rule complies with the underlying legislative intent; and (3) if it meets the first two requirements, whether it is neither arbitrary or capricious.

3. ADMINISTRATIVE LAW — STATUTES — CONSTRUCTION OF STATUTES.

The construction given a statute by the agency charged with the duty of administering it is always entitled to the most respectful consideration and ought not be reversed without cogent reasons.

4. Administrative Law — Agencies — Rules.

Rules adopted by an administrative agency are valid so long as they are reasonable, and if doubt exists as to their invalidity they must be upheld.

5. Licenses — License Fees — Reasonableness.

What is a reasonable license fee depends upon the sound discretion of the legislative body imposing it, with reference to the circumstances and necessities of the case; the amount of the fee will be presumed reasonable unless the contrary appears on the face of the ordinance, by-law, or law itself, or is established by proper evidence.

6. Licenses — License Fees — Automobile Repair Facilities — Statutes.

The Bureau of Automotive Regulation is empowered by statute to promulgate a rule establishing a fee scale for registration of automobile repair facilities based upon the single factor of gross annual revenue of each facility (MCL 257.1330[1]; MSA 9.1720[30][1]).

*Sigal & Seeligson,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Ronald J. Styka,* Assistant Attorney General, for defendants.

Before: Allen, P.J., and Cynar and D. R. Freeman,* JJ.

D. R. Freeman, J. Plaintiffs, motor vehicle repair facilities, brought this class action to recover registration fees defendants collected from them pursuant to the Motor Vehicle Service and Repair Act. 1974 PA 300 as amended by 1976 PA 12, being MCL 257.1301 *et seq.;* MSA 9.1720(1) *et seq.* By order entered September 19, 1977, the circuit court, among other things, denied defendants' motion for accelerated judgment, granted plaintiffs' motion for summary judgment and directed defendants to refund to members of plaintiff class all

---

*Circuit judge, sitting on the Court of Appeals by assignment.

repair facility registration fees they paid from March 1, 1976, to June 17, 1977. Defendants appeal as of right.[1]

The material facts, although confusing, are not in dispute. Section 6 of the Motor Vehicle Service and Repair Act (hereinafter the Act) requires motor vehicle repair facilities to register. As originally enacted, § 30(1) of the Act provided:

"The registration fee for the registration of a motor vehicle repair facility shall be set by rule and shall be determined by a sliding fee scale based upon the size of the facility, number of mechanics employed, and volume of repair work performed as determined by the administrator. Such fees shall be not less than $50.00 or more than $100.00."

On January 9, 1976, pursuant to this provision, the Bureau of Automotive Regulation (hereinafter the BAR), as administrator of the Act, promulgated Rules 24[2] and 25(1)[3] establishing a $50-$100, sliding fee scale based upon size of the facility; number of mechanics employed; and gross annual revenue obtained from the performance of motor vehicle repairs, including parts and goods sold in conjunction with repairs, for the last tax year. These rules were to take effect March 1, 1976.

However, § 30(1) of the Act was amended, effective February 20, 1976, to read:

"The registration fee for the registration of a motor vehicle repair facility shall be set by rule and shall be determined by a sliding fee scale based upon *such*

---

[1] By orders entered earlier, this Court stayed all proceedings below and sequestered all repair facility registration fees collected for the registration year beginning October 1, 1977, pending a final disposition of this cause.

[2] 1976 AACS R 257.124.

[3] 1976 AACS R 257.125(1).

*factors as* the size of the facility, number of mechanics employed, and volume of repair work performed as determined by the administrator. *The fees shall be not less than $25.00 or more than $300.00."* (Emphasis added.)

In response to the amendment, on February 24, 1976, the BAR mailed out repair facility registration application forms which set forth a new fee scale ranging from $25 to $300. The new scale was based upon a single factor, gross annual revenue as defined above. A cover letter directed that the application form and fee be returned within three weeks. On March 9, 1976, the BAR formally promulgated emergency Rules 24[4] and 25(1),[5] to take immediate effect, embodying the new $25-$300, one-factor, gross revenue fee scale. These fee rules were never repromulgated as permanent rules or extended as emergency rules by the filing of a governor's certificate as provided for in MCL 24.248; MSA 3.560(148). Consequently, they expired by operation of law on September 9, 1976. See MCL 24.248.

In November of 1976, the BAR mailed out registration application forms apparently to all still unregistered repair facilities, again utilizing the $25-$300, one-factor, gross revenue fee scale.

On November 12, 1976, plaintiffs filed the instant lawsuit and subsequently defendants moved for accelerated judgment and plaintiffs moved for summary judgment. On June 17, 1977, the circuit court issued an opinion. Therein the court rejected defendants' contention that they were entitled to accelerated judgment on the ground that plaintiffs were collaterally estopped from challenging the validity of the fee rules by a judgment in a prior

---

[4] 1976 AACS, Supp No 87, p 5.

[5] 1976 AACS, Supp No 87, p 5.

action. The court further held that the one-factor, gross revenue fee rules did not comport with § 30(1) of the Act, as amended:

"The legislative intent which can be gleaned from the addition of the phrase 'such factors as' suggests a desire to free the Secretary of State from considering just those three factors. Conceivably, the legislature recognized that developing a sliding scale which is fair and just to all facilities, requires the consideration of a multitude of factors. Yet, the Secretary of State interprets this amendment as allowing the scale to be based on only one factor. Had that been the legislative intent, then the conjunctive 'size of facility, number of mechanics, *and* volume of work performed' would certainly have been amended to 'or.'

"Since the statute requires that at least those three factors be considered, the sliding scale cannot be based upon only one factor merely because of administrative convenience. Rules 24 and 25 have been improperly promulgated and the collection of fees thereunder has been unlawful." (Emphasis in original.)

In response to the trial court's decision, on July 22, 1977, the BAR promulgated emergency Rules 24[6] and 25(1)[7] establishing a $25-$300, three-factor fee scale based upon size of the facility, number of mechanics employed and gross annual revenue.[8]

Defendants also filed a motion for rehearing and on September 8, 1977, the trial court issued a second opinion. Therein the court affirmed its original holding that the one-factor, gross revenue fee rules were invalid and held that all fees collected between March 1, 1976, and June 17, 1977, were illegally collected. The court rejected defen-

[6] 1977 AACS, Supp No 92, p 6.

[7] 1977 AACS, Supp No 92, p 6.

[8] These rules were repromulgated, with a minor variation not relevant here, as permanent rules on December 29, 1977. See 1978 AACS R 257.124, 257.125(1).

dants' arguments that plaintiffs were not entitled to refunds because the fees were collected pursuant to the original $50-$100, three-factor rules which the court had held valid; or because plaintiffs had paid the fees voluntarily; or because plaintiffs sought equitable relief, but did not have "clean hands". And finally, on September 19, 1977, the trial court entered an order denying defendants' motion for accelerated judgment, granting plaintiffs' motion for summary judgment and ordering a refund.

At the outset, we hold that the trial court correctly rejected defendants' contention that plaintiffs were collaterally estopped from challenging the validity of the fee rule and properly denied defendants' motion for accelerated judgment. And we, like the trial court, are unpersuaded by defendants' assertions that plaintiffs are not entitled to refunds because the fees were collected pursuant to the original $50-$100, three-factor rules, or because plaintiffs had paid the fees voluntarily or because plaintiffs did not have "clean hands". Defendants' arguments relative to these points are patently without merit and we decline to discuss them further.

In our view, all repair facility registration fees collected from March 1, 1976, through September 9, 1976, were collected pursuant to emergency Rules 24 and 25, promulgated March 9, 1976, establishing a $25-$300, sliding fee scale based upon one factor, gross annual revenue obtained from the performance of motor vehicle repairs, including parts and goods sold in conjunction with repairs.[9] Thus, the first question we must answer

---

[9] We reach this conclusion because it does not appear that any fees were actually calculated or collected on the basis of the original $50-$100, three-factor rules promulgated before § 30(1) of the Act was amended, and because, although the BAR mailed out registration

is whether the Legislature, by § 30(1) of the Act, as amended, empowered the BAR to establish such a one-factor fee scale. We hold that it did.

As always, we seek to determine and give force to the Legislature's intent in enacting the statute. Section 30(1) of the Act, as amended, expressly directs that the registration fee be set by rule. The BAR is the agency designated to administer the Act and to promulgate such rules. There can be no doubt that the Legislature may delegate such authority and that § 30(1), as amended, provides sufficient guidelines to channel the BAR's discretion. See, generally, *Dep't of Natural Resources v Seaman,* 396 Mich 299; 240 NW2d 206 (1976).

*Chesapeake & O R Co v Public Service Comm,* 59 Mich App 88, 98-99; 228 NW2d 843 (1975), stated the applicable test:

"Where an agency is empowered to make rules, courts employ a three-fold test to determine the validity of the rules it promulgates: (1) whether the rule is within the matter covered by the enabling statute; (2) if so, whether it complies with the underlying legislative intent; and (3) if it meets the first two requirements, when *[sic]* it is neither arbitrary nor capricious. Because the conflict here is over the construction of the enabling statute itself, the question of legislative intent must be intertwined with the question of whether the enabling statute covers the rule."

Section 30(1), as originally enacted, provided that the sliding fee scale be "based upon the size of the facility, number of mechanics employed, and volume of repair work performed as determined by

application forms setting forth a $25-$300, one-factor fee scale on February 24, 1976, before any rules establishing such a fee scale were actually promulgated, repair facilities were given three weeks to register and during that three-week period, on March 9, 1976, emergency rules establishing such a fee scale were promulgated. These rules did not expire until September 9, 1976.

the administrator". Clearly the BAR was required to consider all three factors. But § 30(1) was amended to provide that the sliding fee scale be "based upon *such factors as* the size of the facility, number of mechanics employed, and volume of repair work performed as determined by the administrator". The parties agree that this change in statutory language imports a change in meaning and that the Legislature, by this amendment, intended to expand the BAR's discretion. The difficult question is the *extent* to which the Legislature broadened that discretion. Section 30(1), as amended, is ambiguous in this respect. Plaintiffs argue that, under the amendment, the fee scale still must be based upon the three enumerated factors, but that it may also take into consideration additional factors. Defendants contend that the fee scale need not be based upon any of the enumerated factors so long as it is based upon a factor or factors like those specified. While we acknowledge that the matter is not without some doubt, we concur with defendants. The construction given a statute by the agency charged with the duty of administering it is always entitled to the most respectful consideration and ought not be reversed without cogent reasons. *Magretta v Ambassador Steel Co (On Rehearing)*, 380 Mich 513, 519; 158 NW2d 473 (1968). We perceive no reasons for reversing the BAR's construction. Had the Legislature intended to expand the BAR's discretion only to the extent plaintiffs suggest, it would have amended § 30(1) to provide for a fee scale based upon the size of the facility, number of mechanics employed, volume of repair work performed and any other such factors as determined by the administrator.

We also note that gross annual revenue obtained

from the performance of motor vehicle repairs is a measure of the statutory factor, volume of repair work performed. Further, gross revenue is necessarily, to some extent, reflective of the other two statutory factors, size of the facility and number of mechanics employed. In sum, we conclude that the one-factor rules based upon gross annual revenue were within the matter covered by § 30(1), as amended, and that they comported with the underlying legislative intent.

We now turn to the question of whether the rules were arbitrary and capricious. If there is any doubt as to the invalidity of a rule in this regard, the rule must be upheld. *Toole v State Board of Dentistry,* 306 Mich 527, 533-534; 11 NW2d 229 (1943), *Sterling Secret Service, Inc v Dep't of State Police,* 20 Mich App 502, 514; 174 NW2d 298 (1969). In support of their argument that a fee scale based solely upon gross revenue, including parts and goods sold in conjunction with repairs, is arbitrary and capricious, plaintiffs point to the business of Russ Zuker Tire Service, Inc., one of the named plaintiffs. Russ Zuker, we are told, is a goods-intensive business; it derives 90% of its gross revenue from the sale of tires and only 10% from the provision of services in conjunction with those sales, *i.e.,* mounting, balancing and installing tires. The purpose of the Motor Vehicle Service and Repair Act, plaintiffs suggest, is to regulate the provision of repair services, not the sale of goods. Yet, under the BAR's one-factor, gross revenue rules, Russ Zuker's registration fee would be based primarily on revenue obtained from the sale of tires, not on that derived from the provision of repair services. Thus, it is asserted, the fee does not bear a reasonable relationship to the purposes of the Act and Russ Zuker Tire Service, therefore, has been denied due process of law.

Further, plaintiffs contend, the fee imposed on Russ Zuker is disproportionate to the cost of regulating his business. Section 3 of the Act provides that the installation of tires is a "minor repair"[10] and that, while repair facilities providing minor repair services are subject to the Act, employees performing only minor repairs need not be tested and certified for competence under the Act. Russ Zuker Tire Service, plaintiffs argue, requires only minimal regulation, but under a one-factor, gross revenue fee scale is required to pay the maximum fee of $300. Such a fee scale is, therefore, arbitrary and capricious, it is claimed.

We are not persuaded by plaintiffs' reasoning. The Legislature stated the purposes of the Act in the preamble:

"AN ACT to regulate the practice of servicing and repairing motor vehicles; to proscribe unfair and deceptive practices; to provide for training and certification of mechanics; to provide for the registration of motor vehicle repair facilities; to provide for enforcement; and to prescribe penalties."

The regulation of the practice of servicing and repairing motor vehicles and the proscription of unfair and deceptive practices encompass the regulation of the sale of parts and goods in conjunction with repairs. The BAR, as directed by the Act,[11] has promulgated rules defining "unfair and deceptive" practices.[12] For example, it is an unfair and deceptive practice to represent that repairs, *e.g.*, new tires, are necessary when in fact they are not;[13] to advertise reduced prices for products and

---

[10] See, also, 1978 AACS R 257.111.

[11] See MCL 257.1309(i)(i); MSA 9.1720(9)(i)(i).

[12] 1976 AACS R 257.131-257.137.

[13] 1976 AACS R 257.132(c).

not sell them at the advertised prices;[14] to charge for parts supplied in excess of the estimated price without the knowing consent of the customer;[15] or to misrepresent that, because of some defect in the customer's motor vehicle, the customer's safety is in jeopardy when in fact the defect does not exist.[16] All of these proscribed practices relate to the sale of parts in conjunction with repairs. In this light, it is apparent that the Act has a much broader sweep than plaintiffs have suggested and it seems clear to us that a fee based upon gross revenue obtained from the performance of motor vehicle repairs, including parts and goods sold in conjunction with repairs, bears a very substantial relationship to the purposes of the Act, even in the case of a goods-intensive business such as Russ Zuker Tire Service.

Further, the BAR has extensive investigative and enforcement responsibilities with respect to violations of the Act and of the rules promulgated thereunder.[17] A repair facility with high gross revenue from the sale of parts in conjunction with repairs typically will deal with a high number of customers and will generate a high number of complaints, legitimate or frivolous, requiring investigation by the BAR. The cost of regulating such a repair facility will be correspondingly high. We see little relevance to the fact that those of Russ Zuker's employees who perform only minor repairs such as the installation of tires need not be tested for competence and certified under the Act. A repair facility employing primarily workers who perform only minor repairs is no less likely to

[14] 1976 AACS R 257.134(a).

[15] 1976 AACS R 257.136(b).

[16] 1976 AACS R 257.137(d).

[17] See MCL 257.1321, 257.1322, 257.1326, 257.1327, 257.1328; MSA 9.1720(21), 9.1720(22), 9.1720(26), 9.1720(27), 9.1720(28).

engage in unfair and deceptive practices than one employing only specialty and master mechanics who must be certified.[18] We would also point out that the cost of testing and certifying mechanics is not covered by the repair facility registration fee, but rather by a separate certification fee.[19]

*Fletcher Oil Co v Bay City,* 247 Mich 572, 576-577; 226 NW 248 (1929), stated the dispositive principles:

> "What is a reasonable license fee must depend upon the sound discretion of the legislative body imposing it, having reference to the circumstances and necessities of the case. It will be presumed the amount of the fee is reasonable unless it contrarily appears upon the face of the ordinance, by-law, or law itself, or is established by proper evidence."

See, also, *Merrelli v St Clair Shores,* 355 Mich 575; 96 NW2d 144 (1959), *People v Riksen,* 284 Mich 284; 279 NW 513 (1938). Plaintiffs have failed to rebut this presumption.

In sum, we hold that § 30(1) of the Act, as amended, empowers the BAR to promulgate a rule establishing a sliding fee scale based upon a single factor, gross annual revenue obtained from the performance of motor vehicle repairs, including parts and goods sold in conjunction with repairs; that the emergency rules promulgated on March 9, 1976, and in effect through September 9, 1976, were valid; and that those members of plaintiff class who paid registration fees from March 1, 1976, through September 9, 1976, are not entitled to refunds.

The second question we must answer is whether those members of plaintiff class who paid registra-

---

[18] MCL 257.1305(3); MSA 9.1720(5)(3).

[19] MCL 257.1309; MSA 9.1720(9).

tion fees after September 9, 1976, but before July 22, 1977, are entitled to refunds. During this period no fee rules were in effect.

We begin our analysis with the observation that the BAR's basic authority to collect registration fees derived from the statute, not from the rules promulgated thereunder. Section 30(1), as amended, mandated that a fee of not less than $25 be collected. For this reason, irrespective of the BAR's failure to promulgate a fee rule, every repair facility was liable for a fee of, at least, $25. Section 30(1), as amended, also mandated that the fees range up to $300 and that the precise fee for each repair facility be "determined by a sliding fee scale based upon such factors as the size of the facility, number of mechanics employed, and volume of repair work performed". For these reasons, irrespective of the BAR's failure to promulgate a rule, some repair facilities were liable for fees greater than $25. The function of the fee rules was merely to fix the precise fee for each facility. The absence of fee rules did not operate to deprive the BAR of its basic authority to collect fees, or to absolve plaintiffs of this statutorily imposed liability, but did make it impossible lawfully to determine the precise fee due from each repair facility.

During the period after September 9, 1976, and before July 22, 1977, the BAR apparently calculated the registration fees on the basis of the $25-$300, one-factor, gross revenue scale established by the expired emergency rules. We have held that § 30(1) of the Act, as amended, empowered the BAR to promulgate such rules. However, this does not mean that, absent validly promulgated rules establishing such a fee scale, the BAR may fix fees on that basis. Chapter 3 of the Administrative Procedures Act of 1969 (hereinafter the APA),

MCL 24.231-24.264; MSA 3.560(131)-3.560(164), provides an elaborate procedure for the promulgation of rules by an administrative agency. Pursuant to § 48(1) of the APA, the BAR might have extended its emergency rules for up to six months, but only with the concurrence of the Governor. Pursuant to § 45 of the APA, the BAR might have repromulgated its emergency rules as permanent rules, but only with the concurrence of the joint legislative committee on administrative rules. The BAR may not circumvent the strictures imposed upon it by the APA by calculating fees on the basis of a fee scale not embodied in validly promulgated rules. We cannot usurp the prerogative of the Governor or the committee on administrative rules by presuming that either would have concurred had the BAR attempted to extend or repromulgate the emergency, single-factor, gross revenue fee rules. Accordingly, we hold that the BAR must now redetermine the registration fees paid by members of plaintiff class after September 9, 1976, and before July 22, 1977, pursuant to a sliding fee scale embodied in validly promulgated permanent rules. That fee scale may be based upon a single factor, gross revenue, or upon all three of the factors enumerated in § 30(1) of the Act.

Some members of plaintiff class who paid registration fees during this period may be entitled to refunds. But we emphasize that any such refunds will be in the amount of any difference between the fee actually paid and the fee due as calculated pursuant to validly promulgated fee rules.[20] Other

---

[20] We see absolutely no justification in law or in equity for ordering a refund of *all* fees collected while no fee rules were in effect. As noted above, the BAR's basic authority to collect, and plaintiffs' liability for, registration fees derived from the statute. Section 30(1), as amended, has been in full force and effect from February 20, 1976, to the present. That provision imposed upon plaintiff class a liability for registration fees in amounts between $25 and $300 as determined

members of plaintiff class who paid registration fees during this period may be liable for additional payments. Such additional payments will be in the amount of any difference between the fee actually paid and the fee due as calculated pursuant to validly promulgated fee rules.[21]

Finally, we would note that plaintiffs have not alleged that the BAR denied any of them a registration for failing to tender a fee in the correct amount or sanctioned any of them for failing to obtain a registration. We are unable to discern how plaintiffs might have been adversely affected by the BAR's failure timely to promulgate fee rules. Every plaintiff knew from the outset that if it engaged in the business of a motor vehicle repair facility liability for a fee within the relatively narrow statutory range of $25-$300 would be incurred. The BAR will now redetermine the precise fee owed by each plaintiff who paid between September 9, 1976, and July 22, 1977, pursuant to a fee scale embodied in validly promulgated rules. We perceive no appreciable prejudice to plaintiffs from allowing these rules this exceedingly limited retroactive operation. Were it otherwise, we would be impelled to reach a different result.

by a sliding fee scale based upon such factors as the size of the facility, number of mechanics employed and volume of repair work performed. To order a refund of all fees collected while no rules were in effect would thwart the clear intent of the Legislature that fees in these amounts be collected, hamper implementation of the Act by depriving the BAR of funds intended to finance its operation and afford some members of plaintiff class a windfall recovery.

Parenthetically, we would also note that even had we held invalid the emergency, one-factor, gross revenue fee rules in effect between March 9, 1976, and September 9, 1976, members of plaintiff class who paid registration fees during that period would be entitled to refunds only in amounts of the difference between the fee actually paid and the fee due as calculated pursuant to valid rules.

[21] As plaintiffs' liability for registration fees derived from § 30(1) of the Act, as amended, and as that provision was in effect from February 20, 1976, to present, we do not see our decision as imposing liability retroactively. It is only the precise amount due that is being determined after the fact.

The matter is remanded to the trial court for further proceedings consistent with this opinion.[22]

Affirmed in part, reversed in part, and remanded.

[22] After the BAR has made any necessary adjustments in the registration fees of those repair facilities that paid while no fee rules were in effect, we will entertain a motion to dissolve our order sequestering fees collected for the registration year beginning October 1, 1977.