THE GRAND RAPIDS SCHOOL EMPLOYEES BENEFIT
ASSOCIATION v BOARD OF EDUCATION OF THE CITY OF
GRAND RAPIDS

Docket No. 44037. Submitted December 5, 1979, at Grand Rapids.—
Decided January 23, 1980.

The State Board of Education issued a rule which provided that a
school district shall not employ any person as a school bus
driver who has accumulated seven or more driving record
points in a two-year period. Marcellene Cloud, a school bus
driver in the Grand Rapids School System, had accumulated
seven driving points while driving a private vehicle. Because of
this record she was offered another position. She declined the
new position and instead filed a grievance. Unable to settle the
grievance satisfactorily, Cloud and the Grand Rapids School
Employees Benefit Association filed suit in circuit court seeking
equitable relief from the seven-point rule. Kent Circuit Court,
Roman J. Snow, J., found that the seven-point rule was a
reasonable and valid regulation which was authorized by stat-
ute. Plaintiffs' complaint was dismissed. Plaintiffs appeal. The
question on appeal is whether the State Board of Education has
the authority to issue the seven-point regulation. *Held:*

The State Board of Education has the statutory power to
regulate school bus transportation. The board may adopt
higher standards than provided by the legislation, as long as
the rules and regulations are within reason. The continuous
monitoring of drivers required by the seven-point rule and the
Grand Rapids practice of checking drivers' records whenever
necessary is reasonably within the authority conferred by
statute. It is a reasonable method of assuring the safety of

REFERENCES FOR POINTS IN HEADNOTES
[1] 1 Am Jur 2d, Administrative Law § 131.
[2] 68 Am Jur 2d, Schools § 37.
[3] 68 Am Jur 2d, Schools § 234 *et seq.*
 Nature and extent of transportation that must be furnished under
  statute requiring free transportation of school pupils. 52 ALR3d
  1036.
[4] 1 Am Jur 2d, Administrative Law §§ 113-122.
[5] 2 Am Jur 2d, Administrative Law §§ 296, 303, 304.

children and the continued fitness of the school bus driver. The Legislature could have amended, but did not amend or change, the board's seven-point rule, although *the rule had been in* effect four years and had been strongly contested. Such inaction demonstrates legislative acquiescence in the board's interpretation of the Legislature's intent and indicates that the board was acting within the authority granted by the Legislature. Where drivers' records show that drivers with seven or more points pose a substantially higher accident risk, it cannot be said that a rule barring such drivers from transporting school children is arbitrary or capricious.

Affirmed.

1. ADMINISTRATIVE LAW — AGENCY RULES — VALIDITY.

A rule promulgated by a governmental agency pursuant to statutory authority must be within the matter governed by the enabling statute.

2. CONSTITUTIONAL LAW — SCHOOLS AND SCHOOL DISTRICTS — STATE BOARD OF EDUCATION — SUPERVISION OF PUBLIC EDUCATION.

The constitution gives the State Board of Education leadership and general supervision over all public education (Const 1963, art 8, § 3).

3. SCHOOLS AND SCHOOL DISTRICTS — STATE BOARD OF EDUCATION — SCHOOL BUS REGULATION — STATUTES.

A statute empowers the State Board of Education to regulate school bus transportation (MCL 388.1010[b]; MSA 15.1203[10][b]).

4. ADMINISTRATIVE LAW — RULES AND REGULATIONS — IMPLIED POWERS.

An administrative board or agency may adopt higher standards than provided by legislation, as long as the standards are within reason.

5. ADMINISTRATIVE LAW — AGENCY RULES — VALIDITY — ARBITRARY OR CAPRICIOUS RULES.

A valid administrative agency rule or regulation cannot be arbitrary or capricious.

*Van Hattum & Hickman,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald F.*

*Young* and *Richard P. Gartner,* Assistants Attorney General, for the State Board of Education.

*Hillman, Baxter & Hammond* (by *William S. Farr),* for defendant.

Before: BRONSON, P.J., and ALLEN and R. M. MAHER, JJ.

ALLEN, J. Is a rule, promulgated by the State Board of Education, mandating the discharge of all school bus drivers who accumulate seven or more driving record points within a two-year period, within the authority conferred upon the State Board of Education by § 305 of the Michigan Vehicle Code, MCL 257.305; MSA 9.2005? Following trial on this issue in October, 1978, the trial judge issued an opinion holding the seven-point rule was a reasonable and valid regulation and was within the authority conferred upon the state board. On February 14, 1979, plaintiffs' complaint was ordered dismissed with prejudice. From this order, plaintiffs appeal as of right.

The basic facts are stipulated and are not in dispute. In April, 1976, the Michigan Department of Education notified defendant Board of Education of the City of Grand Rapids (Grand Rapids Board) that plaintiff Marcellene Cloud had accumulated seven driving points and, therefore, pursuant to § 305 of the statute, had failed to comply with the drivers competency test. All points were accumulated while Cloud was driving a private vehicle. Though offered another position which involved longer hours and less pay, she declined and filed a grievance procedure. Unable to settle the grievance satisfactorily, Cloud, along with the Grand Rapids School Employees Benefit Associa-

tion (SEBA), filed suit in circuit court seeking equitable relief from the seven-point rule.

On May 27, 1976, the trial judge issued an opinion holding that issuance of the seven-point rule was within the authority vested by statute in the state board "provided there is a rational basis therefor". Further proceedings on the question of rational basis were stayed pending completion of the contract grievance complaint through arbitration. In April, 1977, the arbitrator to whom the grievance procedure had been submitted held that the state board was without statutory authority to issue the seven-point rule. But on return of the matter to circuit court the trial court refused to enforce the arbitrator's decision for the dual reasons that the "parties did not submit to the arbitrator the question of whether the seven-point rule is within the statutory authority of the State Board of Education" and because enforcement of the award would violate "a positive mandate of law * * *". On October 30, 1978, trial was held and testimony taken on the limited issue of whether there was a rational basis for the seven-point rule. On January 22, 1979, the trial judge issued an opinion incorporating by reference his earlier opinions of May 27, 1976, and June 2, 1977, and, in addition, finding that the seven-point rule was a reasonable and valid regulation which was authorized as part of the competency examination called for under § 305 of the statute. On February 14, 1979, an order, issued pursuant to said opinion, dismissed plaintiffs' complaint with prejudice.

On appeal to us, plaintiffs do not contest that part of the trial court's opinion issued June 2, 1977, holding that the arbitrator was without authority to determine whether the seven-point rule was within the authority of the state board.

The sole question raised by plaintiffs on appeal is the authority of the state board to issue the regulation in question.[1] The rule as issued by the state board and § 305 of the statute under which the rule was issued, read:

"A school district shall not employ after July 1, 1974, any person as a school bus driver who has accumulated seven or more * * * points in the two years preceding his employment."

"It shall be unlawful for any person, whether licensed under this act or not, who is under the age of 18 years to drive a motor vehicle while in use as a school bus for the transportation of pupils. *Before driving a school bus a person shall pass annual physical and driver competence examinations as authorized by the superintendent of public instruction. Such tests shall be made available annually in each of the intermediate school districts.* No person regularly employed as a school bus driver shall drive a motor vehicle while in use as a school bus without possessing a valid chauffeur's license. No person shall operate a school bus or a passenger carrying motor vehicle with a manufacturer's rated seating capacity of 12 or more persons unless he possesses a valid chauffeur's license." (Emphasis supplied.) MCL 257.305; MSA 9.2005.

Prior to 1972, the language emphasized above was not a part of § 305. It was added by 1972 PA 74. In 1974, the state board determined that "driver competence examinations", as those words. were used in 1972 PA 74, would include four areas: (1) physical examination, (2) knowledge examination, (3) driving skill examination, and (4)

---

[1] Although plaintiffs frame the issue in three parts: (1) Is the seven-point rule within the matter covered by the enacting statute? (2) If so, does the rule comply with the underlying legislative intent? (3) Is the rule within the statutory authority of the State Board of Education? —we find that basically this is three different ways to state the same question, *viz:* Was the rule within the authority conferred upon the state board?

driver's record examination. At the trial on October 30, 1978, testimony was offered by the state on the procedure used to implement area (4), the driver's record examination and the rationale for said restriction.

"MR. O'LEARY [Supervisor of Safety and Traffic Programs]: The Department sends out a form to the school districts, listing the bus drivers that the individuals have indicated were employed or were employed the year before and have hired in the interim. At that time they return the form to us, indicating changes, additions, deletions, name changes, whatever the case may be. We then furnish the information to the Secretary of State to put on their computer. The driving records of individuals with four, five, six, or seven points are then forwarded to our office, and we make the districts aware of this."

"MR. DEVLIN [Attorney for Grand Rapids Board of Education]: Can you compare the accident rates for those two classes that you have described?

"MR. LEE [State Director of Research and Evaluation]: There's no question that the drivers with seven or more points at a particular point in time are, as a group, very substantially more involved in accidents in a subsequent period than those who did not have as many points.

"MR. DEVLIN: How many times more likely?

"MR. LEE: Approximately two and one-half times, sir."

A rule promulgated by a governmental agency pursuant to statutory authority must be "within the matter governed by the enabling statute". *Chesapeake & Ohio R Co v Public Service Comm,* 59 Mich App 88, 98; 228 NW2d 843 (1975), *lv den,* 394 Mich 818 (1975). The arbitrator found, and plaintiffs agree, that the seven-point rule exceeds the authority given by the 1972 amendment because it ignores, in fact is inconsistent with, the

affirmative requirement contained in the second sentence of the authority conferred that "[s]uch tests shall be made available annually in each of the intermediate school districts". The accumulation of points is not, as is the driving skill examination and knowledge examination, a test which is submitted to the school districts. Being continuous in nature, the accumulation of points is likewise not "annual". We are not persuaded for three reasons.

First, the argument assumes that the sole authority for the state board to issue such rule stems from the 1972 amendment to the Michigan Vehicle Code. But the state board has greater powers. Const 1963, art 8, § 3, gives the state board "leadership and general supervision over all public education". By statute, the power of "regulation of school bus transportation" is conferred. MCL 388.1010(b); MSA 15.1023(10)(b).

Second, in *Coffman v State Board of Examiners in Optometry,* 331 Mich 582, 591; 50 NW2d 322 (1951), the Supreme Court held that as long as it is "within reason" an administrative board or agency might adopt higher standards than provided by legislation. Witness O'Leary testified he recommended adoption of the seven-point rule to the state board based on the California experience and because he felt that by mandating a *continuing* monitoring of driver points the safety of several million school children would be enhanced. The continuous monitoring of drivers' licenses required by the seven-point rule and the Grand Rapids practice of checking drivers' licenses "whenever necessary"[2] is, in our opinion, "reasonably within" the authority conferred by 1972 PA 74. Clearly, it

---

[2] Though the 1972 act referred to annual examinations, testimony at trial showed that the Grand Rapids Board of Education examined drivers' records annually and "whenever necessary".

is a reasonable method of assuring the continuing fitness of the school bus driver.

Third, although the Legislature was well aware of the state board's seven-point rule, which by 1978 had been in effect four years and had been strongly contested,[3] the Legislature left unchanged the first sentence of § 305 as amended by 1972 PA 74. That is the exact wording which plaintiffs contend precludes driver record examinations. The fact that the Legislature amended § 305, *supra,* without any change in the language "driver competence examinations as authorized by the superintendent of public instruction", as that language had been consistently . interpreted by the state board for four years, demonstrates legislative acquiescence in the state board's interpretation. *Magreta v Ambassador Steel Co,* 380 Mich 513, 521-523; 158 NW2d 473 (1968), *General Motors Corp v Dep't of Civil Rights,* 93 Mich App 366; 287 NW2d 240 (1979).

Plaintiffs also contend that the rule fails to conform to the Legislature's intent because it sets a cutoff at seven points, while the motor vehicle code revokes a chauffeur's license only when 12 or more points are accumulated. Prior to the 1972 amendment, plaintiffs' claim would be well taken. But, as is manifest from the testimony given at trial, the Legislature in enacting 1972 PA 74 intended that school bus drivers meet a higher standard than a showing of good health and possession of a chauffeur's license. Plaintiffs' claim that the Legislature did not intend that a school bus driver's right to drive could be terminated when seven or more points were accumulated in a

---

[3] As early as 1975, an arbitrator held that in adopting the seven-point rule the state board "appears to have gone beyond the Act". *Bay City Public Schools* and *Steelworkers Local #7380,* cited in the arbitrator's opinion and award in the instant case.

two-year period, is contradicted by the failure of the Legislature to enact two bills which would have qualified the rule. In 1975, Senate Bill 153 and House Bill 5019 were introduced in the Legislature. Both bills proposed amending § 305 to make the seven-point restriction applicable only to points accumulated while driving a school bus. Neither bill was reported out of committee. The failure of the Legislature to amend the statute so that it would require no more of school bus drivers than is basically urged by plaintiffs in the instant case is a clear indication the state board acted within the authority granted it by the Legislature and was complying with legislative intent. *Thomas Brothers, Inc v Secretary of State,* 90 Mich App 179, 187; 282 NW2d 273 (1979).

In addition, we conclude that the challenged rule is not arbitrary or capricious under the standard set forth in *Chesapeake & Ohio R Co v Public Service Comm, supra.* Admittedly, the rule does penalize drivers who accumulate points while driving their own or other private vehicles. But according to the testimony of the state's two expert witnesses driving records show that drivers with seven or more points pose a substantially higher accident risk. Given this fact, we cannot say that barring drivers who have that number of points from transporting school children is arbitrary or capricious. *Thomas Brothers Inc, supra.*

Affirmed, no costs, a public question being involved.