DANIELS v BUREAU OF STATE LOTTERY

Docket No. 43639. Submitted January 16, 1980, at Lansing.—Decided July 18, 1980.

Amos Daniels, Jr., brought suit for a declaratory judgment against the State of Michigan, the Bureau of State Lottery and the Commissioner of State Lottery to permit him to operate a second bingo hall to lease to organizations qualified to conduct bingo games. The Ingham Circuit Court, Ray C. Hotchkiss, J., held for plaintiff. Defendants appeal, alleging that the trial court erred in (1) finding that the Bureau of State Lottery exceeded its authority in promulgating an administrative rule limiting the frequency of bingo games conducted at a single premises, and (2) ordering the Bureau to grant plaintiff a hearing concerning his request to operate a second bingo hall. *Held:*

1. The legislative provisions of the bingo act taken together with the statutory authority vested in the Commissioner of State Lottery to promulgate rules to implement the act consistent with the legislative objectives indicate a legislative intent to authorize the commissioner to limit the frequency of games at a particular location, and the commissioner did not exceed his authority in adopting an administrative rule to that end.

2. The rule is within the matter covered by the statute, complies with the essential intent of the statute, and is neither arbitrary nor capricious.

3. The trial court did not err in ordering defendant Bureau to grant plaintiff a hearing concerning his request to operate a second bingo hall.

Reversed.

1. ADMINISTRATIVE LAW — ADMINISTRATIVE AGENCIES — RULEMAK-
   ING POWERS — COURTS — CONSTRUCTION OF RULES — TEST.
   Courts employ a three-fold test to determine the validity of administrative rules: (1) whether the rule is within the matter

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 307.
[2-6] 38 Am Jur 2d, Gambling § 17.

covered by the enabling statute, (2) if so, whether it complies with the underlying legislative intent, and (3) if it meets the first two requirements, it is neither arbitrary nor capricious.

2. CHARITIES — BINGO — CONDUCT OF GAMES — QUALIFIED ORGANIZA-
    TIONS — LOCATIONS — COMMISSIONER'S APPROVAL — LOTTERIES.

Qualified organizations may conduct bingo games at locations which they either own or lease, subject to approval of the Commissioner of State Lottery.

3. CHARITIES — BINGO ACT — LEGISLATIVE INTENT — LEGISLATIVE
    CONTROL — LOCATIONS — STATUTES.

The provisions of the bingo act indicate the intention of the Legislature to exercise extensive, far-reaching control over charitable bingo, including locations where bingo will be played (MCL 432.101-432.120; MSA 18.969[101]-18.969[120]).

4. CHARITIES — BINGO ACT — LEGISLATIVE INTENT — LEGISLATIVE
    CONTROL — LOCATION OF GAMES — LESSORS — COMMISSIONER
    OF STATE LOTTERY — STATUTES.

The Legislature, in specifying control over locations where bingo will be played in provisions of the bingo act, intended to permit the Commissioner of State Lottery to exercise control over landlords who lease their halls to qualified organizations for charitable bingo (MCL 432.101-432.120; MSA 18.969[101]-18.969[120]).

5. CHARITIES — BINGO ACT — COMMISSIONER OF STATE LOTTERY —
    CONTROL — NUMBER OF GAMES — LOCATION — STATUTES.

The bingo act contemplates control by the Commissioner of State Lottery over the number of sets of bingo games by individual licensees that may be conducted at a particular location (MCL 432.101-432.120; MSA 18.969[101]-18.969[120]).

6. ADMINISTRATIVE LAW — LEGISLATIVE INTENT — BINGO ACT —
    STATUTORY AUTHORITY — COMMISSIONER OF STATE LOTTERY —
    RULES — STATUTES.

The provisions of the bingo act taken together with the statutory authority vested in the Commissioner of State Lottery to promulgate rules to implement the act consistent with the legislative objectives, indicate a legislative intent to authorize the Commissioner to limit the frequency of games at a particular location, and the Commissioner does not exceed his authority in adopting administrative rules to that end (MCL 432.113; MSA 18.969[113], 1976 AACS R 432.117[7]).

*Abood & Abood, P.C.* (by *William E. Rheaume),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert J. Taube* and *E. Boomie Mikrut,* Assistants Attorney General, for defendant.

Before: BEASLEY, P.J., and D. E. HOLBROOK, JR., and R. E. ROBINSON,* JJ.

BEASLEY, P.J. In response to plaintiff's suit for a declaratory judgment, the Ingham County Circuit Court held for plaintiff and found that a rule promulgated by the Bingo Division of the Bureau of State Lottery (hereinafter referred to as Bureau) limiting a particular location or premises to not more than five bingo games a week exceeded the rule-making authority extended to the Bureau under the statute and directed the Bureau to "grant approval to qualified bingo licensees to hold bingo games at the plaintiff's hall if the hall was in compliance with other validly promulgated rules and regulations". Defendant appeals as of right.

Since, initially, the issues raised by defendant involve statutory interpretation, we refer in detail to the statute.

In 1972, the Legislature, among other things, passed two bills, one establishing a state lottery and the other providing for the licensing of non-profit organizations to conduct charitable bingo.[1]

A Bureau of State Lottery was created and a commissioner appointed to administer the state lottery and charitable bingo under the two stat-

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCL 432.101-432.120; MSA 18.969(101)-18.969(120).

utes.[2] The statutory plan for charitable bingo limited licenses to qualified organizations which were defined as bona fide religious, educational, service, senior citizens, fraternal, or veterans organizations operating *without profit* to its members and in existence continuously for five years or exempt from taxation under specified statutes.[3]

Among other things, the applicant was required to indicate the *location* at which bingo would be conducted and *the day of the week* on which bingo would be conducted.[4] Upon compliance with the statutory requirements, the commissioner issues a license.

The statute specifically provides "[a] licensee may hold only 1 license and that license is valid for *only 1 location.*"[5] (Emphasis added.) The statute also provides that the bingo license must be conspicuously displayed at the location where bingo is conducted, and the license must provide as follows:

"Each bingo license shall contain the name and address of the licensee, the location at which the licensee is permitted to conduct bingo, the day of the week on which the licensee is permitted to conduct bingo and the expiration date of the license."[6]

The statute provides for special licenses, which type of license is not sought by plaintiff.[7]

Another section of the statute provides that the entire net proceeds of the bingo games shall be

[2] *Id.*
[3] MCL 432.103; MSA 18.969(103).
[4] MCL 432.104; MSA 18.969(104).
[5] MCL 432.105(3); MSA 18.969(105)(3).
[6] MCL 432.106(1); MSA 18.969(106)(1).
[7] MCL 432.107; MSA 18.969(107).

devoted exclusively to the lawful purposes of the licensee. The statute specifically provides:

"* * * An item of expense shall not be incurred or paid in connection with the holding, operating, or conducting of bingo * * * except the following bona fide expenses in reasonable amounts:

"(a) The purchase or rental of equipment necessary for conducting bingo * * * and payment of services reasonably necessary for the repair of equipment.

"(b) Cash prizes or the purchase of prizes of merchandise

"(c) *Rental of the location* at which bingo * * * is conducted.

"(d) Janitorial services. * * *

"(f) Other reasonable expenses incurred by the licensee, not inconsistent with this act, as permitted by rule of the commissioner." (Emphasis added.)[8]

Further provision is made that "[a] person other than a bona fide member of the licensee may not participate in the management of bingo * * *." This section also provides other limitations upon persons who may participate in the operation of bingo and upon any commission, salary, pay, profit or wage for participating in the management of bingo, all being expressly limited to that permitted by rule of the commissioner.[9]

Section 13 provides as follows:

"(1) The commissioner shall promulgate rules to implement this act * * *.

"(3) Rules or temporary rules adopted and promulgated by the commissioner shall insure the integrity and honest operation of bingo games * * * and shall be consistent with the legislative objective that bingo * * *

---

[8] MCL 432.109; MSA 18.969(109).

[9] MCL 432.110; MSA 18.969(110).

shall be conducted in a *friendly, social, and noncommercial manner."* (Emphasis added.)[10]

Section 14 provides for inspection and audit of the books of licensees as follows:

"* * * (3) the location at which the bingo * * * is being conducted or at which an applicant or licensee intends to conduct the bingo * * * shall be open to inspection at all times by a duly authorized employee of the bureau or by the state police or a peace officer of a political subdivision of the state."[11]

Section 19 provides:

"Any other law providing a penalty or disability upon a person who conducts or participates in bingo games * * *, who sells or possesses equipment used in conducting bingo * * *, who permits bingo * * * to be conducted on his premises, or who does other acts in connection with bingo * * * shall *not* apply to such conduct when done pursuant to this act or rules promulgated under this act." (Emphasis added.)[12]

We refer in detail to these provisions of the bingo act in order that they may be understood in their proper historical perspective. Until 1972, the Michigan Constitution prohibited the Legislature from authorizing a lottery. On May 16, 1972, at a special election, the electorate ratified an amendment to the constitution providing:

"Sec. 41. The legislature may authorize lotteries and permit the sale of lottery tickets in the manner provided by law." Const 1963, art 4, § 41.

---

[10] MCL 432.113; MSA 18.969(113).
[11] MCL 432.114(3); MSA 18.969(114)(3).
[12] MCL 432.119; MSA 18.969(119).

Then, the Legislature passed the bingo act, some provisions of which we have set forth above. Prior to passage of the bingo act in 1972, controversy surrounded the legality, or illegality, of charitable bingo. Enforcement rested upon the whim of officials in a particular community. *E.g.,* see the 1949 case of *Society of Good Neighbors v Mayor of Detroit.*[13] The 1972 bingo act undertook to dispel the confusion and to legalize charitable bingo, but only under the extensive strictures of the statute.

Thus, the Bureau promulgated rules to implement the statute, not only with respect to statutory licensees (qualified organizations) but also with respect to the hall landlords of the licensees.

The rule in question here provides:

"432.117(7). A single premise shall not be used for more than 5 regular bingo occasions each week. A single premise includes all components or buildings comprising 1 architectural entity or serving a unified functional purpose."[14]

In this case, plaintiff, Amos Daniels, Jr., leased 10,000 square feet of space in the Daniels Plaza in Muskegon for use as a bingo hall at which five charitable or nonprofit "qualified organizations" under the bingo act conduct bingo games. In January, 1976, plaintiff requested permission of the Bingo Division of the Bureau of State Lottery to rent a proposed second bingo hall in Daniels Plaza to other licensed qualified organizations for the purpose of conducting bingo games. In October, 1976, the Bingo Division denied plaintiff's request for the reason that to grant it would violate the rule[15] that prohibits more than five regular bingo

[13] 324 Mich 22; 36 NW2d 308 (1949).
[14] 1976 AACS R 432.117(7).
[15] *Id.*

dates each week on a single premises.

On appeal, defendant argues that the trial court erred in finding that the Bureau exceeded its authority in promulgating the above quoted rule.[16]

*Chesapeake & O R Co v Public Service Comm*[17] stated the applicable test:

"Where an agency is empowered to make rules, courts employ a three-fold test to determine the validity of the rules it promulgates: (1) whether the rule is within the matter covered by the enabling statute; (2) if so, whether it complies with the underlying legislative intent; and (3) if it meets the first two requirements, when [sic] it is neither arbitrary nor capricious. Because the conflict here is over the construction of the enabling statute itself, the question of legislative intent must be intertwined with the question of whether the enabling statute covers the rule."

Section 12 of the act provides:

"(2) The commissioner by rule shall regulate the *holding, operation, or conducting* of bingo * * *.

"(3) The commissioner shall promulgate rules requiring the licensing of all persons selling, leasing, or distributing equipment used in conducting bingo * * *. Qualified organizations licensed to conduct bingo * * * shall obtain equipment only from licensed suppliers." (Emphasis added.)[18]

Qualified organizations may conduct bingo games, either at their own organization, *e.g.,* an approved American Legion Post may conduct

---

16 *Id.*

17 59 Mich App 88, 98-99; 228 NW2d 843 (1975). See also, *Thomas Brothers, Inc v Secretary of State,* 90 Mich App 179; 282 NW2d 273 (1979).

18 MCL 432.112(2), (3); MSA 18.969(112)(2), (3).

bingo at a building owned by the post, *or* at a location leased by the post. In either event, the location is subject to approval by the commissioner.

The application for license and the license issued must contain the address of the location where the bingo will be played. A licensee (qualified organization) may hold *only one* license, which license is valid for *only one* location. The rent must be in a reasonable amount, and the location shall be open to inspection by the specified governmental officials. These provisions indicate the intention of the Legislature to exercise extensive, far-reaching control over charitable bingo, including locations where bingo will be played.

While these provisions appear to refer to licensees, we would believe in specifying control over locations where bingo will be played, the Legislature intended to permit the commissioner to exercise control over landlords who lease their halls to qualified organizations for charitable bingo.

We interpret the statute to contemplate control by the commissioner over the number of sets of bingo games by individual licensees that may be conducted at a particular location. The statutory requirement that bingo be conducted *in a friendly, social, and noncommercial manner* is best understood within the context of these limitations.

We also note that the rule under attack was adopted in accordance with the procedure established under the Administrative Procedures Act of 1969.[19] Under § 24,[20] notice of intention to adopt the rule was apparently given the Legislature's joint committee on administrative rules. The fact that the legislative joint committee made no objec-

---

[19] MCL 24.201-24.264; MSA 3.560(101)-3.560(164).
[20] MCL 24.224; MSA 3.560(124).

tion to the Bureau and did not claim that the proposed rule was contrary to legislative intention is one more straw in the wind supporting the interpretation we here place on the bingo act.

We hold that the Legislature, in limiting a qualified organization to one license at one location for bingo, in requiring the address of the location and the day of the week to be specified on the posted license, in requiring rent to be reasonable and in permitting specified government officials to inspect the premises where the bingo will be conducted, when taken together with the statutory authority vested in the commissioner to promulgate rules to implement the statute consistent with the legislative objectives, intended to authorize the commissioner to limit the number of bingo games per week that may be conducted at a particular leased location. Thus, we do not believe the commissioner exceeded his authority in adopting Rule 432.117(7).

It is argued that Rule 432.117(7) is a kind of zoning rule designed to restrict concentration of games in a particular locality but that the statute does not support such a rule. We disagree. Restricting concentration in one location of times when qualified organizations may conduct bingo seems consistent with limiting a licensee to *one location* and one set of bingo games per week. Also, it seems consistent with the legislative intention to permit only charitable bingo in a friendly, social, and noncommercial manner.

Applying the tests of *Chesapeake & O R Co, supra,* we hold: (1) the rule is within the matter covered by the statute, (2) the rule complies with the essential intent of the statute, and (3) the rule is neither arbitrary nor capricious.

Consequently, we dissolve the injunction issued

by the trial court to restrain enforcement of Rule 432.117(7).

On appeal, defendant-appellant has also requested that we hold that it was not required to grant plaintiff a hearing concerning its request for permission to rent the allegedly new bingo hall. On the record before us, we decline to find error in the interlocutory order of the trial court directing the Bureau to conduct a hearing.

The other issue raised by defendant-appellant regarding acquisition of bingo equipment by plaintiff is without merit and is not properly before us.

Reversed.